Van Brunt, P. J., and Daniels, J., concurred.

Exceptions sustained and a new trial ordered, with costs to the plaintiff to abide the event.

---

JOHN W. BURCH and HENRY MILDRED, Plaintiffs, *v.* JOSÉ De RIVERA, Defendant.

*Continuing guaranty — it does not continue after a change in the membership of the firm whose obligation is guaranteed.*

An action was brought upon a guaranty dated Heidelberg, Germany, October 28, 1874, signed by the defendant and addressed to Mildred, Goyenneche & Co., London, guarantying to that firm an open credit of £5,000, in addition to the £5,000 that "the house of J. De Rivera & Co., of New York," already enjoyed from the said firm, which contained the following provision: "And accordingly I cheerfully hereby guaranty to you the payment of the above mentioned additional credit of five thousand pounds sterling, my said guaranty to hold good until canceled."

At the time the firm received the guaranty the house of J. De Rivera & Co. was composed of Henry C. De Rivera and Antonio M. Ros, and it so continued until the year 1877, when Antonio M. Ros went out of the firm and Salvador

Ros became a member of it. From that time the firm remained unchanged until 1886, when it failed owing to the plaintiffs the full £5,000 specified in the guaranty. This was entirely for moneys paid by the plaintiffs, under the credit, after the change of partners had taken place in 1877.

*Held,* that the guaranty was not withdrawn from the general rule governing guaranties, because of the expression, "the house of J. De Rivera," as that signified nothing more than the firm or partnership, J. De Rivera & Co.

That the fact that the plaintiffs were not notified of the change in the membership of the firm was immaterial, as there was no evidence that the guarantor was aware of the change.

That the instrument was a continuing guaranty, but that its continuing quality only referred to the duration of the credit and not to firm succession.

That a continuing guaranty does not continue in force after a change in the membership of the firm, unless so expressed in the instrument, either directly or by clear implication.

Authorities on this subject collated by Barrett, J.

Motion for a new trial by the defendant, on exceptions ordered to be heard in the first instance at the General Term, after a verdict had been directed at the New York Circuit in favor of the plaintiffs on February 15, 1889.

*David Milliken, Jr.,* for the plaintiffs.

*Stern & Myers,* for the defendant.

Barrett, J. :

This is an action upon a guaranty which reads as follows :

"Heidelberg, Germany,
28th *October*, 1874.

"Messrs. Mildred, Goyenneche & Co., *London.*

"Gentlemen.—The house of J. de Rivera & Co., of New York, have informed me of your suggestion that I might guarantee to you an open credit of (£5,000) in addition to the (£5,000) that they already enjoy from you in the shape of an open credit. I am so well satisfied with the manner in which the said house is working that I have still left in their hands, not only the one hundred and odd thousand dollars that I left with them when I withdrew from the firm, but I have increased the loan to some extent. Still I know that they must have credits in England to obtain consignments from the West Indies and South America, and accordingly I cheerfully

hereby guarantee to you the repayment of the before mentioned additional credit of five thousand pounds sterling, my said guaranty to hold good until canceled.

"Yours, very truly,

(Signed.) "J. DE RIVERA,

"*Darmstadter Hof, Heidelberg.*"

The plaintiffs carry on business in London under the firm name of Mildred, Goyenneche & Co. The testimony shows *prima facie* that they are the same persons to whom the guaranty was given. At the time they received the guaranty the house of J. de Rivera & Co. was composed of Henry C. de Rivera and Antonio M. Ros. It so continued until the year 1877, when Antonio M. Ros went out of the firm and Salvador Ros came in. From that time until 1886 the firm remained unchanged. In 1886 the firm failed, owing the plaintiffs the full £5,000 specified in the guaranty. This was entirely for moneys paid by the plaintiffs under the credit after the change of partners in 1877, and the question is whether the defendant is responsible therefor under this guaranty.

There is no doubt that this is a continuing guaranty. The entire instrument so indicates and the concluding expression, "my said guaranty to hold good until canceled," is conclusive. That, however, only refers to the duration of the credit, not to firm succession. The rule in England has always been that a guaranty does not continue in force after a change in the principal debtor's firm, unless so expressed in the instrument, either directly or by clear implication. The principle is plain. A man may be willing to guaranty A and B, but be unwilling to guaranty A and C. So he may be willing to guaranty a firm composed of A and B, but not a firm composed of A and C. He may guaranty solely on the strength of B's ability or caution. At all events, his contract is to guaranty a copartnership firm composed of certain persons, and that contract cannot be altered or extended without his consent.

The case of *Backhouse* v. *Hall* (6 Best & Smith, 505 ; 118 Com. Law Rep., 505) is directly in point. Lord Blackburn said it was a hard case, as the plaintiffs did not know of the change of membership for some years, whereas it was known to the guarantor. But the rule was deemed inflexible and the court observed that "if the

parties to a guaranty, given to a firm, mean that it is to continue in force though there be a change of parties, *it is very easy to express that.* (*Strange* v. *Lee,* 3 East, 490; *Weston* v. *Barton,* 4 Taunt., 673; *Simson* v. *Cooke,* 8 Moore, 588; *Myers* v. *Edge,* 7 T. R. 254; *Dry* v. *Davy,* 10 Ad. & El., 30; *Solvency M. G. Co.* v. *Froane,* 7 H. & N., 17; *Pemberton* v. *Oakes,* 4 Rus. 154.) The present guaranty is not withdrawn from the general rule because of the expression "The house of J. de Rivera & Co." That signified nothing more than the firm or partnership of J. de Rivera & Co. That the guarantor used the words "house" and "firm" as equivalent expressions is evidenced by this language: "I am so well satisfied with the manner in which *the said house is working* that I have still left in *their* hands not only the one hundred and odd thousand dollars that *I left with them* when I withdrew *from the firm,* but I have increased the loan to some extent." Thus the house is not treated as an institution or collective body or joint stock company, with fluctuating membership, as in *Metcalf* v. *Bruin* (12 East, 400). On the contrary, the writer evidently refers to the particular individuals *whom he left in the firm* and with whose business qualifications, experience, character and judgment he was acquainted. These characteristics it may fairly be presumed he relied on, and for individuals possessing these qualifications he was willing to assume responsibility. The cases where peculiar or added force is given to the expression "the house of" so and so, are those of indemnity bonds for personal service, such as *Barclay* v. *Lucas* (3 Doug., 321, and see note to *Lord Arlington* v. *Merricke,* 3 Wm. Saund. [3d Am. ed.], 414, note 5). That was a case of security to the house for the fidelity of a clerk, and Lord MANSFIELD held that a continuous and successive indemnity was intended. As was said in the note above cited "for the fidelity of a clerk *in the shop and counting-house * * *'* a change of partners is said to make no difference, but the surety still continues."

This case of *Barclay* v. *Lucas* has been repeatedly criticised and doubted. (*Dance* v. *Girdler* 1 New R., 42; *Weston* v. *Barton,* 4 Taunt., 681.) In the latter case Lord MANSFIELD himself, in following the general and settled rule, observed: "This, then, being the construction of the instrument from almost all the cases, in truth, we may say from all (for though there is one

adverse case of *Barclay* v. *Lucas*), *the propriety of that decision has been very much questioned*," etc. And in *Strange* v. *Lee* (*supra*), Lord Ellenborough suggested a possible view upon which *Barclay* v. *Lucas* might be entertained. " In *Barclay* v. *Lucas* the words were different from the present case, the clerk was to be taken *into the service* of the obligees as a clerk in the shop and counting-house, which might be supposed to mean *the same house, however the individual partners might change.*"

The wide difference between such a case and that of a guaranty *for* the house of a principal debtor is apparent. In the latter case " the house " could not, without an express stipulation to that effect, well be supposed to mean the same house, however the individual partners might change, and the guarantor's responsibility must have been understood to end when the persons for whom he agreed to be responsible ceased to constitute the house. The fact that the plaintiffs were not notified of the change is immaterial. They may have an action against the firm as it existed before the change, because of failure to notify them of such change or to publish the dissolution. That proceeds upon another principle, namely, the presumption attached to continuous firm dealings without notice. The guarantor, however, is not responsible for the state of facts which might justify a recovery against the original members. There is no evidence here that he was aware of the change. He seems to have been as much without notice as the plaintiffs themselves. But were it otherwise, we may say, in the language of Lord Blackburn in *Backhouse* v. *Hall* (*supra*) : " Nothing is stated to show, either, that the defendant was under any obligation to inform the banking-house of that fact or that he took any steps to conceal it."

The defendant's obligation is not to guaranty any judgment which, owing to collateral circumstances, the original members of the firm may have become liable to, but the repayment of moneys actually advanced for them while they are in business together, and together constitute the particular firm. We find no cases in this country where this precise question has been considered. *The Bank of Poughkeepsie* v. *Phelps* (97 N. Y., 50) is cited, but in that case the change was *in the guarantor's firm.* It is, of course, entirely inapplicable. It seems that, since the failure, the plaintiffs have received some £2,000 upon account of Rivera & Co.'s indebtedness.

The evidence falls short of showing that this sum was paid by the defendant, but even if that had clearly appeared, it would not have affected the question of his liability. This depends wholly upon a proper construction of the contract and the defendant's notions upon the subject, as was said by Lord Blackburn in *Backhouse* v. *Hall* (*supra*), are of no moment.

The exceptions should, therefore, be sustained and a new trial ordered, with costs to defendant to abide the event.

Van Brunt, P. J., and Daniels, J., concurred.

Exceptions sustained and new trial ordered, with costs to defendant to abide the avent.