A. M. BYERS & Co., Appellants, v. HICKMAN GRAIN Co. *et al.*

Guaranty:    RELEASE:    *Dissolution of partnership.*    Guarantors of an obligation to secure the bank account of a partnership are released, where, before any advances are made thereunder, one of the partners withdraws from the firm; and this, whether the obligee knew of such change in the firm or not, and though a member of the firm informed the obligee that no change had been made.

Partnership Dissolution:    NOTICE.    A retiring partner is not re-leased from liability on an obligation securing the bank account of the partnership, where the only notice which the bank had of the dissolution was such as might be implied from the firm name signed to checks, and on making inquiry it was informed by a remaining partner, who had been manager of the partnership's business, that there had been some change of the firm's business at other points, but none so far as its business at that point was concerned.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

Thursday, December 20, 1900.

Action on a written promise to pay the sum of $2,500, to which was attached the following: "The conditions of this are that Hickman Grain Co., dealers in grain for shipment and feeding at Clearfield, &c., shall get money of said bank, shall do. checking and depositing as required by their business from time to time during the six months, and we become responsible to said bank for any amount their books show against said Hickman Grain Co., not exceeding above-named amount. M. Hickman. J. W. Hickman. C. M. Hickman. Day Dunning, Security. Geo. S. Allyn, Security." The answers put in issue the liability of defendants Allyn, Dunning, and C. M. Hickman. Judgment for plaintiff against all defendants except Allyn and Dunning. The plaintiff and defendant C. M. Hickman appealed separately. —*Affirmed.*

*A. J. Johnson* and *Maxwell & Winter* for plaintiff.

*Henry & Spence* and *J. P. Flick* for defendants.

Granger, C. J.—I. The plaintiff appeals from the order of the court dismissing the petition as to defendants Allyn and Dunning, and defendant C. M. Hickman appeals from the judgment against him.

We first notice the appeal as to Allyn and Dunning. The following are the findings of the district court as to facts and the law: "(1) That on and prior to December 1, 1894, the defendants M. Hickman, J. W. Hickman, and C. M. Hickman were engaged in business as partners under the firm name of Hickman Grain Company. (2) That prior to said date last mentioned the said firm did business with plaintiff as bankers, borrowed money, deposited money in plaintiff's bank, and drew checks against said deposits, in the regular and ordinary course of business. (3) That at said date the de-

fendant firm was desirous of getting larger advances than plaintiff was willing to make on the responsibility of said firm, and its members, the said defendants Hickman, made and prepared to be executed by the defendants, as sureties for them, the instrument set out in the original petition herein. (4) That, subsequent to the execution of said contract, plaintiff advanced to said firm the sum of $7,531.41, and defendant firm repaid to plaintiff the sum of $5,182.50, and on the 31st day of May, 1895, said firm was indebted to plaintiff in the sum of $2,348.91. The court finds, as a matter of fact, that prior to August 8, 1894, the firm of Hickman & Co. were engaged in the grain business at Clearfield, Iowa, and was composed of M. Hickman and J. W. Hickman; that it did business in the name and style of Hickman & Co., and had an account with plaintiff, A. M. Byers & Co., engaged in banking in said name, August 8, 1894, when C. M. Hickman, a son of M. Hickman, and brother to J. W. Hickman, became a member of the firm, and the firm name was changed to the Hickman Grain Company; that said firm did business at several points, C. M. Hickman managing the business at the Q. towns, J. W. Hickman managing the business at the Diagonal towns, and M. Hickman having charge of the business at Clearfield; that a new bank book was made out by plaintiff at that time in the name of the Hickman Grain Company, and the entries thereon commenced August 8, 1894; that plaintiff's cashier kept said account on said bank books in the name of Hickman & Co. until September 1, 1894, and after said date, until February 28, 1895, in the name of Hickman Grain Company, and thereafter as Hickman & Co.; that checks were drawn and honored in the name of Hickman Grain Company through August, September, October, November, and part of December, 1894; that December 19, 1894, C. M. Hickman withdrew from said firm, the firm of Hickman Grain Company was dissolved, the business settled, and the grain

on hand divided; that M. Hickman and J. W. Hickman continued the business at Clearfield and some other points, resuming the name of Hickman & Co.; that on and after December 19, 1894, most of the checks drawn on plaintiff were drawn in the name of Hickman & Co., although several during December, 1894, and one in January, 1895, were drawn in the name of the Hickman Grain Company; that all checks so drawn were drawn by an employe, and not by a member of the firm; that all checks drawn by either M. or J. W. Hickman, on and after December 19, 1894, were drawn in the name of Hickman & Co.; that all checks drawn after January 1, 1895, were in the name of Hickman & Co. The court further finds that the defendants Day Dunning and George S. Allyn signed said note on the 14th of December, 1894, and that no business was done by the Hickman Grain Company with the plaintiff herein between the said 14th day of December, 1894, and the 19th day of December, 1894. The court finds that, as a matter of fact, the plaintiff firm had no notice directly from C. M. Hickman of his withdrawal from the firm at any time prior to the commencement of this action; that the only notice that the said plaintiff firm had of the said C. M. Hickman's withdrawal was such notice as might be implied or inferred from the matters testified to by the witnesses and the drawing of the checks in the name of Hickman & Co. The court further finds that the plaintiff firm made inquiries of the resident managing member of the said Hickman Grain Company as to whether or not there had been any change in the personnel of the firm, and were informed by said resident managing member of said firm that there had been some change in the firm's business at other points, but that there had been no change in the firm so far as its business was conducted at the town of Clearfield, Iowa. The court finds, as a matter of law and of fact, that such notice, taken in connection with the facts as bearing upon said withdrawal, and the statements made by said other members

of said firm in explanation, was not such notice of the retirement of the said C. M. Hickman as would discharge him from liability on said note, and that, therefore, he is bound thereby. The court finds, as a matter of law, that as to all transactions after the said 19th day of December, 1894, the plaintiff could not recover as against the sureties, Dunning and Allyn, for the reason that there had been a material change in the personnel of the partnership, one of the members thereof retiring, and that sureties, or guarantors, would not be liable for any advances made after that time by plaintiff under the contract."

The findings of fact by the district court are fully sustained by the evidence. This conclusion will set at rest one point argued at some length by appellant, to the effect that the firm of Hickman Grain Company was not dissolved. It is not necessary to discuss the evidence leading to the conclusion. A fact relied upon by appellant is that it had no notice of the dissolution, and it is urged that such notice is necessary for the discharge, as guarantors, of Allyn and Dunning. We know of no such rule of law, and no authority is cited in support of appellant's contention. The written instrument fixes the obligation of the guarantors. They assumed the obligation of answering for the default of the Hickman Grain Company, and for no other person. Hickman & Co. came into existence after the dissolution of the Hickman Grain Company, and its business was settled. The personnel of the two companies was different. We know of no rule of law requiring the guarantors to, in any way, look to the protection of the plaintiff in its dealings with the Hickman Grain Company. It fixed its own terms with the grain company as to the doing of business, and the guarantors simply became liable, under the terms of that contract, in case of default. The contract imposed no obligation on them to aid the plaintiff in the conduct of its business with the grain company. The plaintiff was, presumably, as well situated to know of changes

in the firm as the guarantors; for it was in somewhat close business relations with the firm, and had some information of a change, because of the change of names on the checks presented for payment. It is of no moment, so far as the guarantors are concerned, that one of the firm of Hickman & Co. told plaintiff that there had been no change in the firm at Clearfield. The guarantors were not bound by his statements. The guarantors had no interest in the grain company, and were entirely without responsibility or authority as to changes that might be made in the firm. It seems to us the case comes within the rule and reasoning of *Schoonover v. Osborne,* 108 Iowa, 453, in which we said: "A rule never to be lost sight of in determining the liability of a surety or guarantor is that he is a favorite of the law, and has a right to stand on the strict terms of his obligation, when such terms are ascertained. This rule is universally recognized by the courts, and is applicable to any variety of circumstances."

II. Although by the dissolution of the firm C. M. Hickman retired, and the other two constituted the firm of Hickman & Co., and drew the money for which suit is brought, the district court held C. M. Hickman liable because of no notice to the plaintiff of such a change. Some particular facts are important. After the change in the firm there was a change in the signature to the checks, which led plaintiff to inquire of M. Hickman what it meant, and was informed that, while there had been a change in the firm as to other places, there had been none at that place, and the change in name was made for convenience. After this, checks came in signed by one firm name and some by the other, those having the name of the Hickman Grain Company being drawn by an employe. It seems to us the plaintiff used due diligence to know the reason of the change of names on the checks, and had a right to rely on the statement made by M. Hickman, who was the resident managing partner of the firm of Hickman

Grain Company at Clearfield, and did the business with the bank. The settlement of the firm matters of the Hickman Grain Company was had before any money was paid out under the contract in suit. Until plaintiff should have notice of a dissolution of the firm, it had a right to presume the firm in existence, and its contract in force. C. M. Hickman must take notice of this situation, and we think he was required to notify plaintiff of the dissolution, or, in default thereof, to stand liable for the performance of the contract by plaintiff in good faith. Under the contract, all understood that M. Hickman, as the business manager at that point, would be the business man with the plaintiff, to whom the plaintiff must look for information. He was, in fact, the agent of the Hickman Grain Company, and the one of whom inquiries would naturally be made. The checks, signed by Hickman & Co., when presented by a member of the Hickman Grain Compny under the contract, indicated on their face a change of some kind, but nothing to put plaintiff on inquiry as to C. M. Hickman or either member of the firm in particular. It was but natural to accept the statement of M. Hickman that the firm still continued at that place. It is urged that the same evidence that would release Allyn and Dunning will compel a reversal as to C. M. Hickman. The difference is in this: That Allyn and Dunning were guarantors, and were parties to the contract merely to befriend the principals. They were in no sense beneficiaries under the contract, with duties arising therefrom. Not so with C. M. Hickman. As a member of the firm, he stood personally liable for the firm's obligations under the contract, and knew of the situation whereby M. Hickman would be the managing member, and agent of the firm at Clearfield, and naturally the person on whom reliance would be placed as to dealings under the contract. As we view the evidence, he was the legitimate spokesman for the firm in the business at that place. We attach much importance to these peculiar facts in reaching

·our conclusion. We reach the conclusion that the judgment, ·on each appeal, should be AFFIRMED.