## John Huston et al. v. Louis M. Newgass et al.

### Gen. No. 13,188.

DRAFTS—*when recovery cannot be had under promise to honor.* A promise to honor a draft drawn by a co-partnership composed of two persons does not include an obligation to honor a draft drawn by one member of such co-partnership after its dissolution, even though such draft be drawn in the name of such firm and even though the drawee has been given no notice of the dissolution of such firm.

FREEMAN, P. J., dissenting.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed June 25, 1907.

**Statement by the Court.** This is an appeal by the plaintiffs from a judgment for the defendants in an action of assumpsit which was tried by the court without a jury.

Plaintiffs were, in 1904, bankers at Blandinsville, Illinois, and defendants then were engaged in selling horses on commission at the Union Stock Yards, Chicago. In March of that year, Isaac Grindell went to Blandinsville and engaged in the business of buying horses in that vicinity and shipping them to the Union Stock Yards to be sold. He opened an account in his own name with plaintiffs. April 1, he applied to plaintiffs to discount his draft for $2,500 on defendants. In answer to a telegram from plaintiffs, defendants telegraphed them as follows: "We will pay draft Isaac Grindell $2,500 for horses shipped to us." Grindell drew a draft for that sum April 5, 1904, to the order of plaintiffs, which was discounted by them and paid by defendants. About this time John Dainty became a partner of Grindell. Grindell soon after April 5 informed plaintiffs that Dainty had gone into business with him, and plaintiffs wrote in Grindell's pass book,

over his name, the words, "Grindell & Dainty." A few days before April 15, plaintiffs wrote defendants that they wished a letter stating absolutely that they would honor all drafts drawn by Grindell and Dainty, and in answer, under date of April 15, defendants wrote plaintiffs as follows: "We will honor drafts drawn by Dainty and Grindell, drawn on us for horses until further notice." Grindell for his firm bought several carloads of horses in April, May and June, in the vicinity of Blandinsville, and shipped them to defendants to be sold. Before paying for each lot of horses so bought he drew, in the name of the firm, a draft on defendants to plaintiffs' order, which plaintiffs discounted, placed the proceeds to the credit of said firm, and paid the same out on checks drawn by Grindell in his own name. The course of business between Grindell and Dainty and the plaintiffs was for Grindell to go into the country, buy horses, pay a small amount down on each horse, fix a day for the delivery of the horses at Blandinsville and payment of the remainder of the purchase price. Before going out he would sign a draft in the name of his firm on defendants, payable to the order of plaintiffs, with the date and amount left blank. When he had bought a carload of horses he would direct plaintiffs to fill out the draft for a certain amount and they would then fill out the draft and send it forward for collection. All the drafts so drawn previous to July were paid by the defendants. In the latter part of June, 1904, the co-partnership between Grindell and Dainty was dissolved and was not afterwards renewed. In July, Grindell went out to buy horses, leaving with plaintiffs a blank draft on defendants to plaintiffs' order, signed Grindell and Dainty. July 21, he attempted by telephone to direct the plaintiffs to make the draft for $2,300, but plaintiffs understood him to say $3,300, filled out the draft for that amount and sent it forward for collection. Grindell shipped in his own name fourteen horses to defendants, which reached defendants and were sold

before the draft was presented for payment. The net proceeds of the sale of the horses was $1,609.25. At the time they discounted said draft, plaintiffs did not know of the dissolution of the firm of Grindell and Dainty. Defendants learned of the dissolution of said firm before the horses were sold. The defendants refused to honor said draft on presentation, and plaintiffs protested the draft for non-payment and brought this suit.

The first count of the amended declaration sets out the facts in detail and avers that defendants agreed to accept said draft for $3,300, but failed and refused to do so. The second count avers that defendants accepted said draft, but refused to pay it after such acceptance. The remaining counts are the consolidated common counts.

HUSTON & SULLIVAN and M. HENRY GUERIN, for appellants.

NEWMAN, NORTHRUP, LEVINSON & BECKER, HARRY GOODMAN and C. E. CLEVELAND, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

By the letter of defendants to plaintiffs of April 15, defendants promised plaintiffs to honor drafts drawn by Dainty and Grindell on them, drawn for horses, until further notice. We do not deem it material to determine whether the promise contained in that letter would operate as an acceptance of a draft drawn within its terms, or was a promise to accept such draft. The draft sued on was not drawn by Grindell and Dainty, but by Grindell in the name of Grindell and Dainty after the dissolution of that firm.

Defendants might be willing to promise to honor drafts drawn by Dainty and Grindell, but not a draft drawn by Grindell alone. Their contract with plaintiffs was to accept drafts drawn by a co-partnership

composed of two persons, and that contract cannot be altered or extended without their consent to include a draft drawn by one member of the firm after its dissolution, although drawn in the name of the late firm. The fact that plaintiffs were not notified of the dissolution of the co-partnership is immaterial. They may have a right of recovery against the members of the co-partnership as it existed before the dissolution, because of the failure of the partners to notify them of the change. But the rule which allows a recovery under such circumstances against partners does not apply to an action against the defendants. The defendants were under no obligation to the plaintiffs to inform them of the dissolution of the firm of Grindell and Dainty. Byers v. Hickman Grain Co., 112 Iowa, 451; Burch v. De Rivera, 53 Hun, 367; First Nat. Bank of Lacon v. Bensley, 2 Fed. 609.

The evidence tends to show that in the carload of horses shipped July 21 there were a few horses bought by Grindell and Dainty before the dissolution. But plaintiffs cannot in this action recover from the defendants the proceeds of the sale of such horses, or the proceeds of the carload of horses shipped July 21. Plaintiffs must recover upon the promise to honor drafts contained in defendants' letter of April 15, or they cannot recover at all.

We think it is plain from the evidence that the terms of the letter of April 15, by which the defendants promised to honor drafts drawn on them by Grindell and Dainty, were not complied with, and the judgment will therefore be affirmed.

*Affirmed.*

Mr. Presiding Justice Freeman dissenting.