CLINTON W. RICHARDSON, Respondent, *v.* COUNTY OF STEUBEN, Appellant.

Fourth Department, June 15, 1916.

Guaranty and suretyship — liability of surety for partnership after change therein — when guaranty under institutional name does not continue in force beyond existence of firm — equity — suit to recover payments made under mistake of fact.

A surety for a copartnership cannot be held upon his obligation for debts contracted after a change in the personnel of the firm.

A contract of guaranty by a partnership terminates with the existence of the firm, in the absence of ambiguity or specific words to show that the parties intended it should survive change in the firm and inure to the benefit of the new firm as well as the old.

A guaranty under an institutional name does not continue in force beyond the existence of the identical firm for which it was given.

Hence, a guaranty executed by the " George W. Hallock Bank " in said name by " William M. Hallock, Cashier," which did not refer to the copartnership of Mary H. Hallock and Louise N. Hallock, then owners of the bank, is not a continuing security for the bank as an institution.

Where such an undertaking was given for the security of deposits by a county treasurer, and after the death of one member of the firm which was unknown both to the sureties and the county treasurer, said sureties made payment to the treasurer of losses occurring after the change in the firm, they may recover the moneys so paid upon the theory that payment was made under a mistake of fact, and without knowledge of the change in the firm.

The failure of the sureties to make an investigation by which they might have ascertained the true situation does not operate as a bar to the maintenance of their action.

APPEAL by the defendant, County of Steuben, from a judgment of the Supreme Court in favor of the plaintiff, entered in

the office of the clerk of the county of Steuben on the 6th day of December, 1915, upon the decision of the court, a jury having been waived.

*Fred A. Robbins* and *James Flaherty,* for the appellant.

*Monroe Wheeler,* for the respondent.

Judgment affirmed, with costs, upon the opinion of SAW-YER, J., delivered at Trial Term.

All concurred.

The following is the opinion of Mr. Justice SAWYER:

SAWYER, J.:

In the year 1849 one George W. Hallock established a private bank at Bath, N. Y., which was thereafter continuously conducted under the name of the George W. Hallock Bank until May 31, 1912, when it was closed and its owners shortly afterwards adjudged to be bankrupts.

Mr. Hallock died in the year 1895 and, following his death, the bank was owned and conducted by his wife, Mary H. Hallock, and his son, William H. Hallock, as copartners. After the death of William H. Hallock, which occurred the 7th day of April, 1908, his place in the business was taken by his son, William N. Hallock, who with Mary H. Hallock as a partner continued therein until Mrs. Hallock's death upon the 21st day of July, 1910. Thereafter the bank was carried on by William N. Hallock individually until about the 1st of June, 1911, when his mother, Louise N. Hallock, the widow of William H. Hallock, became a partner therein and as so constituted it remained until its failure in May, 1912. While this bank was generally understood to belong to the Hallock family no outsider appears to have, after the death of George W. Hallock, known which particular ones of the family were its owners, nor whether it was a corporation, a copartnership, or an individual enterprise. So closely did the members of this family keep their private concerns that even trusted employees, who had been in the bank many years, were in ignorance of the facts. From the beginning to the end of the business transactions in this bank there was no apparent change what-

ever, no suspension, no notice of dissolution, nothing to indicate to the public that any change at any time had taken place until its career was finally ended.

Shortly prior to January 24, 1910, Mr. William G. Masterman, who was county treasurer of the defendant county, designated it as one of his depositories, and upon that day it, by the name of George W. Hallock Bank, made and executed to him an undertaking for the security of his official deposits, upon the precise conditions prescribed by section 145 of the County Law (Consol. Laws, chap. 11; Laws of 1909, chap. 16), which undertaking plaintiff and one George W. Peck signed as sureties. After its approval by the proper authorities various transactions were had by the county treasurer with the bank, so that upon the death of Mrs. Mary H. Hallock the next July there remained with it on deposit a balance of about $2,000 of county moneys. Following her death and between then and the failure of the bank in May, 1912, its business relations with the county treasurer continued with the result that these deposits were entirely withdrawn, but by reason of other and subsequent deposits the bank, when it closed, had become indebted to defendant upon its treasurer's deposits, including interest, in the sum of $6,081.99. After the failure of the bank and upon June 4, 1912, Mr. Masterman as such treasurer served a notice upon plaintiff, and his cosurety, in which he stated to them that they were liable upon the undertaking in question for such remaining deposits and demanded payment. Shortly thereafter plaintiff paid to him the sum of $3,041 in settlement of his supposed liability, taking in exchange an assignment of an undivided one-half of the county's claim against the bankrupt estate, which moneys were duly and properly turned over by Mr. Masterman to defendant. Plaintiff now seeks to recover the moneys so paid, upon the theory that the payment was made under a mistake of fact and without knowledge that the death of Mrs. Mary H. Hallock had dissolved the copartnership then owning the bank, and, therefore, terminated his liability, except for moneys then on deposit.

That neither Mr. Masterman nor the plaintiff knew that Mrs. Mary H. Hallock had been a partner in the banking firm until

long after its failure, and that both of them were ignorant of the fact that her death may have ended the obligation of the sureties to the undertaking, is undisputed and that the payment was made in the mutual supposition of both of them that nothing had occurred since its making and delivery to release plaintiff from his liability for the deposits owing at the time of the failure, is clearly shown. It is quite likely that after the demand was made upon him plaintiff could, by reasonable inquiry, have ascertained the true situation of affairs, and resisted payment upon the same ground he now rests upon. His failure to make such investigation does not, however, operate as a bar to the maintenance of this action. (*Lawrence* v. *American National Bank*, 54 N. Y. 432; *Hathaway* v. *County of Delaware*, 185 id. 368.)

The general rule that one who stands as a surety for a copartnership cannot be held upon his obligation for debts contracted after a change in the personnel of the firm, is too well established to require comment or citation of authority, and is fully recognized by the learned counsel for the defendant. The action is, however, defended upon the theory that the undertaking in question, reciting, as it does, that it is given to secure deposits in the George W. Hallock Bank, and being executed by the bank in that name by William N. Hallock, cashier, and nowhere referring to the copartnership of Mary H. Hallock and Louise N. Hallock, then its owner, is to be construed as a continuing security for the bank as an institution. That the rule of *strictissimi juris* under which such obligations are ordinarily construed is not applicable, for the reason that, as it stands, the instrument of suretyship is ambiguous and is, therefore, to be given the construction most favorable to the rights of the county whose money has been deposited upon its faith. (*Smith* v. *Molleson*, 148 N. Y. 241; *Gamble* v. *Cuneo*, 21 App. Div. 413.)

If this contract is to be held as an exception to the general rule above noted, it must be upon the strength of two English cases. (*Barclay* v. *Lucas*, 1 Term Rep. [D. & E.] 291; *Metcalf* v. *Bruin*, 12 East, 400.)

Of these, *Barclay* v. *Lucas* was decided by the Court of Kings Bench in 1786 and is better known than *Metcalf* v. *Bruin*, decided by the same court in 1810. A slight difference

in the facts of the latter case also tends to weaken its authority upon the proposition here advanced.

*Barclay* v. *Lucas* has been often discussed both by the courts and textbook writers and while it has never, so far as I can ascertain, been expressly overruled, it has been constantly criticised and distinguished by the courts both in England and in this State. The contract there under consideration was one guaranteeing the honesty of a person who was to be taken into the service of the firm of J. Barclay & Co., private bankers, "as a clerk in the shop and counting house," and the decision turned upon the intendment of the parties as determined from the circumstances surrounding the making of the contract.

Whatever weight as a precedent this holding may have upon a similar state of facts, it can have no controlling force here. As was said by Mr. Justice BARRETT, the wide difference between such a case and that of a guaranty *for* the house of a principal debtor is apparent. In the latter case "the house" could not, without an express stipulation to that effect, well be supposed to mean the same house, however the individual partners might change, and the guarantor's responsibility must have been understood to end when the persons for whom he agreed to be responsible ceased to constitute the house. (*Burch* v. *De Rivera*, 53 Hun, 371.)

It may be said that the language quoted, because of the facts there presented, was a statement obiter, but it nevertheless expresses what seems to me the true limitation of *Barclay* v. *Lucas*, and its distinction from that then under consideration as well as that now at bar. Here the obligation is not to secure to the George W. Hallock Bank, as such, the honesty of a prospective employee, or even payment to it of another's indebtedness, but is a guaranty to the defendant and its county treasurer for the George W. Hallock Bank as a principal debtor.

With us it has never been held by the courts that a guaranty under an institutional name continued in force beyond the existence of the identical firm for which it was given, and I do not deem *Barclay* v. *Lucas*, running, as it does, counter to our entire policy, a sufficient warrant for so doing.

It is undoubtedly true that where such a contract so spe-

cifically provides it will be held to be a continuing guaranty and to survive changes in its principal's firm, and it is equally true that where such a contract is ambiguous in its terms recourse may be had to the surrounding circumstances for ascertainment of the intention of the parties. (*Bennett* v. *Draper*, 139 N. Y. 266; *Gamble* v. *Cuneo*, 21 App. Div. 413.)

This undertaking contains, however, no specific provision for changes in the business composition of the George W. Hallock Bank, nor does there appear upon its face any ambiguity as to the intendment of its makers.

They are presumed under the law of our jurisdiction to have had in contemplation the George W. Hallock Bank as then constituted, namely, William N. Hallock and Mary H. Hallock, doing business as copartners under that name.

The earnest diligence of counsel has brought to my attention many cases bearing upon this general subject of surety's liability. All have been carefully examined, but need not here be specifically referred to. It is sufficient to say that together they establish the law of this State to be as above stated, namely, that in the absence of ambiguity or specific words to show that the parties intended it should survive change in the partnership and inure to the benefit of the new firm as well as the old, such a contract terminates with the existence of the firm for which it was given.

Upon the claim assigned to him plaintiff has received certain dividends for which he is accountable, as well as for the claim itself, to defendant, and his recovery must be contingent upon a reassignment of the claim and a crediting of such dividends upon his demand.

Judgment is directed for plaintiff, with interest from the commencement of action, together with costs.