**BANK OF NEW ENGLAND, N.A., Plaintiff,**

v.

**Michael KLEIN, Defendant.**

**Civ. A. No. H–85–6261.**

United States District Court, S.D. Texas, Houston Division.

June 8, 1988.

Karl G. Dial, Dallas, Tex., for plaintiff.

Kaaran E. Thomas, Houston, Tex., for defendant.

## MEMORANDUM ON SUMMARY JUDGMENT

HUGHES, District Judge.

The Bank of New England sued Michael Klein to enforce his guaranty of its loan to Aerospace Technologies, Inc. The year after Klein became a surety for Aerospace, it filed for protection under Chapter 11 of the Bankruptcy Act. The parties have both moved for summary judgment on Klein's liability for the bank's unpaid post-petition loans to the debtor-in-possession and the reorganized debtor corporation.

Summary judgment will be granted for Klein because: (1) the post-petition Aerospace was a different legal entity from the one whose debts Klein secured; (2) credit extended by the bank after the bankruptcy was under a new contract to which Klein was not a party.

*Background.*

On March 30, 1983, the bank and Aerospace signed two loans, a revolving loan for up to $2 million and a term note for $280,000. To secure the notes, Aerospace

pledged collateral. Klein guaranteed the notes and delivered to the bank a deed of trust and certificates of deposit. Klein's guaranty was limited expressly to 40% of Aerospace's debt at the time default was declared by the bank.

On May 4, 1984, when Aerospace filed for bankruptcy, it owed the bank $1,971,-071.89. A year later, in May 1985, the bank demanded of Aerospace–DIP payment of all indebtedness. Unable to pay the $2,146,575 then due on the revolving loan and $172,665 on the term loan, the company surrendered the collateral, which was sold for $1,502,284.25. These proceeds were applied to the company's pre-petition debts. Klein contends that he was a guarantor for pre-petition loans only and that the satisfaction of this debt from the foreclosure of Aerospace's collateral released him from liability.

On May 7, 1984, the bankruptcy court approved the bank's agreement for interim financing of Aerospace–DIP. The terms of the old loan agreement were to apply. All post-petition advances were administered by the bank's controlled loan department, and the debtor was required to open a debtor-in-possession checking account. Under the order, the bank's extension of credit was conditioned on the re-execution of guarantees by Farrell, Patrick, and Rose, who were Aerospace's principals. Klein was never part of the management of the company, although he owned 40% of its common stock in 1983 and 1984.

On May 24, 1984, the bank wrote Klein that it would not consider financing Aerospace–DIP beyond June 4, 1984, without reaffirmation of his 1983 guarantee together with a change in his liability limitation. Klein refused.

The bank's records currently show an outstanding balance of $806,956.41. On October 24, 1985, the bank demanded that Klein pay 40% of all outstanding loans to Aerospace. Klein again refused. The bank declines to release property Klein pledged against his guaranty arguing that, because it was a continuing guaranty, it secured loans made after default and insolvency.

The guaranty provides that it will be governed by Massachusetts law.

*Surety for One Entity.*

■ A guarantor is liable only for the debts of the entity named in the guaranty agreement. *Leo v. Loomis,* 246 Mass. 366, 141 N.E. 115 (1923); *Hunt Oil Co. v. Killion,* 299 S.W.2d 316 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.). Klein's guaranty was terminated by operation of law when Aerospace Technologies ceased to exist in 1984. On filing bankruptcy, Aerospace became Aerospace–DIP. "The change reflects more than a simple change in nomenclature. Pursuant to 11 U.S.C. § 1107(a), the debtor-in-possession enjoys all the rights of (and bears the responsibilities and duties of), a trustee operating the business under Chapter 11. Indeed the debtor-in-possession is an entity distinct from the debtor." *In re Hugo,* 58 B.R. 903, 908 (Bankr.E.D.Mich.1986).

■ A change in the identity of the debtor is not always in itself sufficient to release the guarantor. *U.S. Shoe Corp. v. Hackett,* 601 F.Supp. 531, 534 (E.D.Wis. 1985). In this case, the change in identity is combined with a discharge in bankruptcy, the formation of an insolvent corporation, the execution of a new loan agreement, and an inherent risk of lending to an insolvent borrower. The substantive changes plus the change in identity release the guarantor.

As a corporation in Chapter 11, Aerospace–DIP was run for the benefit of creditors and reported to a United States trustee and the bankruptcy court. Aerospace underwent more than a change in name; it had a new purpose for operating.

The change in identity is reflected in the interim financing order, which is a separate obligation undertaken by a new debtor and distinct from the original two notes. The court's order distinguishes between the pre-petition debt and that of the debtor-in-possession. Conditioning the refinancing on the re-execution of guaranties indicates that the court and parties (including the bank) treated the debtor-in-possession as a separate entity and the interim financing

as a new contract. The fact that the terms of the old agreement were to control the refinancing does not make it a unified contract with the first.

The principals' continued operation of the company and the similarity of the business dealings do not make Aerospace–DIP a formalistic alter ego, lacking any substantive difference, from the pre-petition Aerospace. "The rule in England has always been that a guaranty does not continue in force after a change in the principal debtor's firm, unless so expressed in the instrument either directly or by clear implication." *Hunt Oil Company v. Killion,* 299 S.W.2d 316 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.), *quoting Birch v. De Rivera,* 63 Hun 367, 6 N.Y.S. 206 (N.Y.Sup.Ct. 1889).

■ For the same reason that the setoff of pre-petition debts against post-petition claims is prohibited, a creditor is not entitled to claim a surety of pre-petition debt as a guarantor of post-petition loans; the debtor and the debtor-in-possession are distinct entities, and there is no mutuality of obligation. *In re Braniff Airways, Inc.,* 42 B.R. 443 (Bankr.N.D.Tex.1984). Applying this rationale, a surety's right of equitable subrogation does not include the use of profits from a post-bankruptcy job to offset losses on pre-bankruptcy jobs. *Ram Const. Co., Inc. v. American States Ins. Co.,* 749 F.2d 1049 (3d Cir.1984).

*Two Contracts.*

■ Under the terms of his guaranty, Klein did not guarantee all debts of Aerospace; therefore, even if the two corporate debtors are identical, unless the current debts are derived directly from the original loan agreement to which Klein was a surety, he is not liable to the bank. The May 1984 loans are new, distinct transactions from the March 1983 transaction that Klein guaranteed.

In the second series of agreements with Aerospace, both the bank and the debtor had an equal interest in seeking the protection of the bankruptcy court. Important concessions were made by the debtor to the bank when they struck a second deal.

Having tried to improve its position through a new contract that failed, the bank cannot now resurrect the benefits of the original arrangement.

Klein waived objections to extensions and modifications of the original loan agreement and to release of the debtor; he did not consent to be a surety under a new loan agreement with a different, insolvent borrower.

*Material Change.*

■ While the bank's continued extension of credit and consent to Aerospace's reorganization were entirely legal, they put the guarantors at a substantially greater risk. The consequent material changes in the bank, Aerospace, and Klein's relationships weigh in favor of a release but are secondary to the company's undergoing a change in its legal identity.

When a material change in the business dealings between the debtor and the creditor takes place, increasing the guarantor's risk, the guarantor's obligation is discharged. *Bernardi Bros., Inc. v. Great Lakes Distribution, Inc.,* 712 F.2d 1205 (7th Cir.1983). Massachusetts law has long recognized that unforeseen harm to the guarantor arising, for instance, from the dissolution of the debtor partnership or from significant corporate reformations can release a surety. *See, Cremer v. Higginson,* 1 Mason 323, Fed.Cas. No. 3,383 (Mass.1817) (Justice Story) "If a creditor will undertake to give a new credit to his debtor, and thereby materially to change the situation of a surety, and a fortiori of a guarantor, the latter is absolved from all responsibility, unless he has notice of, and becomes party to, the new transactions." *Id.* at 802. In the reverse situation, Justice Holmes released a lender from extending credit once the debtor entered bankruptcy in *Lenox v. Murphy,* 171 Mass. 370, 50 N.E. 644 (1898).

Klein's risk of having to pay Aerospace's debt (for which there was insufficient collateral) materially increased after May 1984. Loans to insolvent companies are, to belabor the obvious, highly risky. The interim financing order permitted advances

in excess of the $2 million limit specified in the first loan agreement. To hold Klein liable for Aerospace's debtor-in-possession loans would impose upon him a wholly different risk from that which he undertook in 1983.

The contract provision that allowed the bank to make the advances "regardless of the debtor's financial ... condition" would permit the bank to recover from Klein disbursements it made to Aerospace when Aerospace was insolvent, but that language cannot be extended to cover advances to Aerospace–DIP under a new contract.

*Paragraph Ten.*

■ The bank argues that paragraph ten of the guaranty requires Klein to pay Aerospace's post-petition debts. It reads: "If at any time payment ... must ... be returned by the bank upon the ... bankruptcy ... of the debtor ... this guarantee will continue to be effective or shall be reinstated ... as though such payment had not been made."

This paragraph of Klein's guaranty obligates him to make good on a portion of the original debt should, for instance, a payment to the bank be voided as a preference. It assures that bankruptcy will not discharge Klein for Aerospace's pre-petition debts. This rule is codified in the Bankruptcy Act, 11 U.S.C. § 34, and embodied in Massachusetts law. *BMC Durfee Trust Co. v. Steiger,* 4 N.E.2d 1014 (Sup. Ct.Mass. Bristol 1936). The continuing nature of the guaranty does not obligate Klein to pay debts of reorganized or successor corporations.

*Waiver of Release and Discharge.*

■ In the bankruptcy context, paragraph ten parallels paragraph five which provides that the release of or extension of time to the debtor will not discharge Klein. The guarantor can only be held for the debt of his principal, and absent an agreement to the contrary, any release of his principal by substituting another principal releases the guarantor. When an insolvent corporation is substituted as principal payor of a note, the guarantor is released from liability for debts incurred by the new principal. *May v. Waniger,* 164 S.W. 1106 (Tex.Civ.App.—San Antonio 1914, no writ). Parties to an obligation cannot alter its terms without the guarantor's consent even though it may be to the guarantor's advantage. *Ralston Purina Co. v. Herman Carter,* 210 Cal.App.2d 372, 26 Cal. Rptr. 690 (5th Dist.1962).

In the bankruptcy proceedings, Aerospace and the bank agreed to suspend repayment after the first loan commitment expired (in March 1984) and while a default existed. Ordinarily, an extension of time for the payment of a principal debt operates to release a surety because it increases his risk and undermines his rights of subrogation. The only exception to the rule of release is where a creditor reserves his rights against the surety in the original guaranty. *Id. quoting* Restatement, Security, § 122; *B.M.C. Durfee Trust Co., supra.* This case falls within the exception. Paragraph five of the limited guaranty provides, "The guarantor waives all diligence in collection or protection of or realization upon any of the liabilities" and waives notice of "the bank's releasing security interests ... and other party's guarantees ... grants to the debtor ... extensions of time." Paragraph six reinforces paragraph five by stating that actions listed in the preceding paragraph do not release the guarantor from his obligations.

Although these paragraphs preclude Klein's complaining about liability for pre-petition debts because of releases or extensions given to the original Aerospace, they can never be construed to cover the substitution of the debtor with a new borrower, under a new contract. The bank might have used the collateral first to satisfy post-petition debts and called on Klein for forty percent of a larger balance of pre-petition debt.

The bank's decision not to oppose the company's reorganization based on the theory that as a going concern it was of greater value than if liquidated did not impair the bank's recourse against Klein for pre-petition debts. With regard to the newly organized company, the bank voluntarily enhanced its risk by the continuing exten-

sion of credit when only three guarantors joined in the new venture.

*Conclusion.*

The loans to Aerospace are categorically different from loans to Aerospace–DIP; guaranty of one is not a guaranty of the other. The loan agreement with its particular guaranty is categorically different from the obligations embodied in the post-bankruptcy loan with its particular guaranties. Secondarily, the bank's decision to refinance a borrower that was reorganizing as a corporate debtor-in-possession constituted a material change in the debtor-creditor relationship that, by placing the surety at greater risk, had the effect of discharging him.

The bank may not collect from Klein any unpaid post-petition advances made to Aerospace–DIP. The parties will be ordered to submit documentation within thirty days showing whether Aerospace has an unpaid balance on its pre-petition revolving and term notes. If there is a pre-petition debt, after allowance of all credits under all the agreements, Klein will have to pay forty percent of it.

### INTERLOCUTORY SUMMARY JUDGMENT

1. The parties will file by July 15, 1988, either a stipulation or summary judgment evidence whether a pre-petition debt of Aerospace Technologies, Inc., exists on the revolving or term notes and its amount, after allowing all credits.

2. Michael Klein is not liable to the Bank of New England, N.A., for the post-petition debts of Aerospace Technologies, Inc., Debtor-in-Possession.