443 P.2d 999

Ray BJORNSTAD, Plaintiff and Cross-Defendant, Appellant and Respondent to 1st and 2nd Cross-Appellants,

v.

George C. PERRY and Enid Perry, husband and wife, Defendants and Cross-Claimants, 2nd Cross-Appellants and Respondents to Appellant and 1st Cross-Appellant.

Ray BJORNSTAD, Third-Party Plaintiff, Appellant and Respondent to 1st and 2nd Cross-Appellants,

v.

GRIDLEY INVESTMENT COMPANY, a corporation, Third-Party Defendant, 1st Cross-Appellant and Respondent to Appellant.

No. 9945.

Supreme Court of Idaho.

July 24, 1968.

E. L. Miller, Coeur d'Alene, and Stephen Bistline, Sandpoint, for appellant Bjornstad.

H. S. Sanderson, Coeur d'Alene, for respondents Perry.

Hawkins & McCabe and Wm. D. McFarland, Coeur d'Alene, for respondent Gridley Investment Co.

TAYLOR, Justice.

For clarity and simplicity the parties will be referred to by name.

The Perrys, husband and wife, owned the "Boulevard Motel" in Coeur d'Alene, Idaho. The property was encumbered by a first mortgage in the principal sum of nearly $10,000.00. The Perrys attempted to obtain a loan to pay off the mortgage and expand the motel. After several potential lenders had refused such a loan, Mr. Perry early in 1957 placed the following ad in a local newspaper:

"$20,000 First mortgage paying $225 month at 7% on 10-unit new motel in Coeur d'Alene, Idaho, valued at $50,000, for $17,500. Write C 27, care this newspaper."

A. L. Gridley, founder and major stockholder and official of the Gridley Investment Company, an Idaho corporation, acting in behalf of the corporation, read the ad and wrote to the newspaper January 14, 1957, advising that he had clients who might be interested in such a loan. Mr. Gridley had had over 40 years experience in secured and real estate transactions.

Responding to Gridley's letter, Mr. Perry went to the office of the Gridley Investment Company in Coeur d'Alene and affirmed his desire to procure a loan on the terms mentioned in the ad. Thereafter.

Gridley contacted various individuals who might be interested in making such a loan. Among these was the plaintiff Ray Bjornstad. At the time Gridley knew, from other business transactions, that Bjornstad had approximately $13,500.00 in available funds. Gridley represented to Bjornstad that the proposal presented a good business transaction and a good return and offered to make available to Bjornstad the additional $4,000.00 necessary to make the loan of $17,500.00 in return for a $20,000.00 first mortgage on the motel property.

Relying upon Gridley's representations Bjornstad agreed to make the loan to Perry. Gridley and Bjornstad together inspected the property; Gridley obtained a title report and informed Bjornstad that the title was merchantable; Gridley then prepared an application for loan agreement (which the court found to be a closing statement), a promissory note and mortgage. The promissory note and mortgage were executed and delivered by the Perrys. The note provided for the payment by Perrys to Bjornstad of the sum of $20,000.00 with interest thereon at the rate of 7% per annum, computed monthly upon the unpaid balance, and provided for payment in certain monthly installments, for acceleration of maturity in case of default, and for attorneys fees and costs in case of action thereon.

Gridley retained the money loaned by Bjornstad and paid it to Perrys as they presented him with bills during the course of expansion of the motel. The $17,500.00 was paid over to Perrys in toto by August, 1957. However, interest on the $20,000.00, face amount of the note, commenced to accrue January 28, 1957, the date of the note. For his services in the transaction, Gridley was paid $175.00 by the Perrys and the same amount by Bjornstad. The temporary loan of $4,000.00 made by Gridley to Bjornstad was repaid without interest, and the first mortgage on the motel property was satisfied prior to the commencement of this action.

Perrys made payments on the note until August 8, 1962, after which no further payments were made. Payments totaled $13,500.00. Bjornstad commenced this action to foreclose the mortgage December 14, 1962. Perrys answered and counterclaimed, alleging usury and praying for the penalties provided by statute therefor. Bjornstad thereupon filed a third party complaint against the Gridley Investment Company, praying that if Perrys recover any judgment against him, he have judgment over therefor against Gridley Investment Company.

The trial court found that the transaction was usurious, and that holding has not been challenged. The court also found that all parties had full knowledge of the facts. In its judgment the court awarded to Perrys three times the amount of interest charged in the note, including the discount, amounting to a total of $28,324.47, under authority of I.C. § 27–1907.[1] The court offset against this amount "the balance due under the note and mortgage of $12,548.09, including insurance premiums and plus accrued interest to date at 7% per annum of $3,357.20, for a total of $15,905.29." Thus, judgment for Perrys against Bjornstad was entered in the sum of $12,419.18, plus costs of $13.00. The note and mortgage were adjudged to be satisfied and discharged.

The court further found that Gridley acted as agent in the transaction for both Bjornstad and the Perrys; that Bjornstad properly relied upon Gridley's superior knowledge (Bjornstad was a man of 8th grade education); that Gridley acted in a fiduciary capacity as to Bjornstad; that Bjornstad had no actual knowledge of the illegality of the note and mortgage; that Gridley was charged with knowledge of the usurious nature of the contract; that Gridley Investment Company, through Gridley, illegally practiced law in the transaction; that Gridley's representations to Bjornstad as to the contract were false, material and dam-

---

1. Now re-compiled as I.C. § 28–22–107.

aging to Bjornstad; that Bjornstad's liability to the Perrys resulted from Gridley's representations; that Bjornstad did not discover the truth as to the usurious nature of the contract until Perrys defaulted; that the statute of limitations, I.C. § 5–218(4), had not run; that A. L. Gridley acted in behalf of the Gridley Investment Company. Judgment in favor of Bjornstad and against the Gridley Investment Company was entered in the sum of $17,169.18 ($12,419.18 on the liability of Bjornstad to the Perrys; $3,999.99 as the difference between the total sum paid by Perrys to Bjornstad and the principal of the loan; and $750.00 attorneys fees) plus costs of $26.50.

All three parties appeal from the judgment.

Bjornstad contends that the Perrys should have been estopped from claiming usury. It was already held in this state that the doctrine of estoppel should not be applied to prevent enforcement of the usury law because the penalties imposed thereby were for the benefit of a public agency. Ford v. Washington Nat. Bldg., etc. Ass'n, 10 Idaho 30, 76 P. 1010, 109 Am.St.Rep. 192 (1904). Such rule is no longer applicable since the penalties now enure to the benefit of the person who has paid or been charged usurious interest. I.C. § 28–22–107.

■ Equitable estoppel generally requires that a false representation or concealment of a material fact be made with actual or constructive knowledge of the true state of facts; that the party to whom the false representation was made was without knowledge or the means of acquiring knowledge of the real facts; that the false representation was made with the intent that it be acted upon; and that the party to whom it was made relied and acted upon it to his prejudice. Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833 (1939); accord, Minidoka County for Use and Benefit of Deteveiler Bros. Inc. v. Krieger, 88 Idaho 395, 399 P.2d 962 (1964); Fairchild v. Wiggins, 85 Idaho 402, 380 P.2d 6 (1963).

■ The record shows no misrepresentation of material fact by the Perrys. Any misunderstanding which may have arisen from the newspaper ad proposing the sale of a $20,000.00 first mortgage was dispelled by the subsequent knowledge given to Gridley and Bjornstad that the proposal was actually one for a loan of $17,500.00 in return for a note and mortgage for $20,000.00, and this knowledge of the true facts was given to and understood by Gridley and Bjornstad before the transaction was entered into. Hence, the defense of estoppel was not supported by the record.

■ Secondly, Bjornstad urges that the note should have been reformed and that he be allowed to recover the principal amount loaned, $17,500.00, plus interest at 7% per annum. Under certain circumstances, such as where usury is eliminated from the transaction by agreement of the parties before the issue is submitted for judgment of the court, the transaction may be purged of usury. Sanford v. Kunz, 9 Idaho 29, 71 P. 612 (1903). However, the court cannot reform the transaction after an action has been brought to enforce the contract and the claim of usury has been interposed. Brown v. Home Credit Co., 137 So.2d 887 (2nd Dist.Ct.App., Fla.1962), cert. discharged, Home Credit Co. v. Brown, 148 So.2d 257 (Fla.1962); Person v. Mattson, 33 N.D. 49, 156 N.W. 780, Ann.Cas.1918A 747 (1916).

■ Finally, Bjornstad urges that, in order to afford him complete relief, the judgment in his favor against Gridley Investment Company should be modified to allow interest for the loss of the use of the money loaned for the period of the loan. This assignment has not been supported by authority or argument and we do not consider it further. Supreme Court Rules, Rule 41; Big Butte Ranch, Inc. v. Grasmick Produce Co., 91 Idaho 6, 415 P.2d 48 (1966).

On their appeal the Perrys question the amount of the judgment awarded in their favor, contending that the court erred in allowing Bjornstad, as an offset, the interest that had been paid on the note, plus interest on unpaid principal balance for the period from the last payment to the date of the court's decision. The usury statute provides:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a forfeiture by the person so taking, receiving, reserving or charging to the benefit of the person paying or being charged, of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back the amount of the interest thus paid from the person taking or receiving the same, plus twice the amount of such interest in addition. No indorsee in due course of negotiable paper is affected by any usury exacted by any former holder of such paper unless he have actual notice of the usury previous to his purchase. I.C. § 28–22–107.

The figures used by the trial court in computing the penalty have not been questioned and we presume their correctness.[2] The methods of computation, however, conflict with the statute and are corrected herein. Petersen v. Philco Finance Corporation, 91 Idaho 644, 428 P.2d 961 (1967).

■■■ Interest as provided by the note amounted to $9,441.49; principal actually loaned $17,500.00. The Perrys paid $5,955.79 in interest and $7,544.21 princi-

pal. $9,955.79 principal and $3,485.70 interest have not been paid. The Perrys must be returned the $5,955.79 interest paid plus twice the amount of interest paid for a total of (3 x $5,955.79) $17,867.37. Bjornstad's right to the $3,485.70 interest unpaid is forfeited, and in addition a penalty of twice that amount, or $6,971.40 is awarded to the Perrys. The total penalty award to the Perrys thus is $24,838.77. From this amount is deducted the unpaid principal, $9,955.79,[3] leaving a total award of $14,882.98. Since the Perrys are being returned the $5,955.79 interest paid, such amount will not be deducted from the principal due. Nor (as an offset against the penalty) should interest be allowed on the unpaid principal from the time of Perrys' default. The Perrys owed Bjornstad nothing. The penalties for which he was liable to them under the statute were greater in amount than the unpaid principal of the loan. It is axiomatic that when there is no debt, no interest can be charged. Moreover, the statute clearly provides that the charge of usury shall be deemed a forfeiture "of the entire interest which the contract carries with it." Hence, the contract being usurious, no interest whatever on the principal can be charged or offset against the penalties.

In Cornelison v. United States Bldg. etc. Ass'n, 50 Idaho 1, 292 P. 243 (1930), it was held that all payments made upon an usurious contract whether of principal or interest should be deducted from the principal sum. That holding is not applicable here because in this case the interest paid is returned to the borrower.

■■■ An insurance premium of $92.30 paid by Bjornstad for insurance on the mortgaged property was properly allowed as an offset against the penalty. Thus,

---

2. Except for a few inconsequential errors which we have corrected in the body of the opinion.

3. The trial court evidently used the figure of $12,548.09 as the unpaid balance.

This figure was taken mistakenly from the collection ledger wherein the principal loaned was alleged to be $20,000.00. Since the actual principal loaned was proved to be $17,500.00, we have adjusted the unpaid principal accordingly.

we arrive at a total of $14,790.68 due from Bjornstad to the Perrys.

The Gridley Investment Company on its appeal contends that it was not liable to Bjornstad for his loss resulting from the usurious contract, and that the court erred in granting judgment over against it in favor of Bjornstad. It is not denied that Mr. Gridley was acting on behalf of the Gridley Investment Company, nor is it denied that the company acted as a loan broker in this transaction. Generally a broker is bound to exercise reasonable care and the skill ordinarily possessed by persons engaged in that business, and is liable to his principal for any loss resulting from a failure to do so. See Frye v. Levanger, 76 Idaho 252, 281 P.2d 134 (1955); 12 C.J.S. Brokers § 26. A broker in this state who assists in securing or in making loans for others is bound to know of the existence and effect of our usury law. Mr. Gridley was a man of long experience in the real estate, brokerage and loan business. The record in this case indicates Gridley was acting as agent for both parties. See Mayfield v. British and American Mortgage Co., 104 S. C. 152, 88 S.E. 370 (1916).

The trial court imposed liability on the Gridley Investment Company on the grounds of fraud and illegal practice of law. Assuming, as Gridley contends, that neither was shown by the evidence, nevertheless the company incurred the liability by reason of its breach of duty as a broker. Where the judgment is properly entered on a correct theory and supported by the record, it will not be vacated merely because it may have been rendered upon a different or erroneous basis. Layrite Products Company v. Lux, 91 Idaho 110, 416 P.2d 501 (1966).

Milo Theater Corp. v. National Theater Supply, 71 Idaho 435, 233 P.2d 425 (1951) is cited by appellant Gridley Investment Company in support of its contention that the judgment against it in favor of Bjornstad is erroneous. In that case it was held that a third party who did not receive, reserve or charge usurious interest could not be held liable under the usury statute. However, that case is not in point here. There the third party was alleged to have been a party to the usurious contract, and to have received, reserved and charged usurious interest. This court held that the evidence did not support that allegation. Here the Gridley Investment Company was not alleged to have been a party to the usurious contract or to have received, reserved or charged usurious interest. The company was charged, and held liable to Bjornstad, for damages sustained by the latter resulting from breach of its duty as a broker.

Gridley Investment Company's contention that the trial court's judgment against it allowed Bjornstad a double recovery is not supported. The company was given the benefit of all offsets allowed Bjornstad against Perrys. But, in addition thereto, Bjornstad was unable to collect from Perrys $4,000.00 of principal, because of the company's neglect of duty. Thus, the company became liable to Bjornstad for this item of damage also.

The action of the trial court in allowing Bjornstad the sum of $750.00 against the company for attorney fees is not assigned as error, and will not be reviewed. Bolen v. Baker, 69 Idaho 93, 203 P.2d 376 (1949); Supreme Court Rules, Rule 41.

The cause is remanded to the district court with directions to modify its judgment as follows: to award the Perrys judgment against Bjornstad for $14,790.68; to award Bjornstad judgment against the Gridley Investment Company for $18,790.-

'68, plus $750.00 for attorneys' fees. As so modified the judgment is affirmed.

No costs allowed.

SMITH, C. J., McFADDEN, J., and YOUNG, D. J., concur.

McQUADE, J., sat at the hearing, but did not participate in the decision.