504 P.2d 807

**MOUNTAIN STATES TELEPHONE AND TELEGRAPH, aka, Mountain Bell, Plaintiff-Appellant,**

v.

**Ross C. LEE and Jane Doe Lee, husband and wife, Defendants-Respondents.**

No. 11100.

Supreme Court of Idaho.

Dec. 29, 1972.

Stephan, Balleisen & Slavin, Twin Falls, for plaintiff-appellant.

May, May & Sudweeks, Twin Falls, for defendants-respondents.

McQUADE, Chief Justice.

This action relates to the enforceability of a guarantee contract, such type of contract having been held valid in Idaho.[1] A "guarantee contract" is a contract of an assurance by a "guarantor" for payment of a debt, or the performance of a duty, or contract by another person.[2]

In February of 1969, Lee Pontiac, Inc., dba Trans Magic Airlines, was operating a business known as Trans Magic Airlines. On February 10, 1969, Ross C. Lee, president of Lee Pontiac, Inc., located in Jerome, Idaho, as an individual signed a continuing guarantee agreement for payment of the "Trans Magic Airlines" account to Mountain States Telephone.

1. Durant v. Snyder, 65 Idaho 678, 689, 151 P.2d 776 (1944).

2. *Id.*, 65 Idaho at 689, 151 P.2d 776. *See also* McCallum v. Campbell-Simpson Motor Co., 82 Idaho 160, 165, 349 P.2d 986 (1960).

On March 13, 1970, Trans Magic Airlines Corporation was incorporated, Ross C. Lee being one of the many original incorporators. The assets of Lee Pontiac, Inc., dba Trans Magic Airlines, were transferred to the newly formed Trans Magic Airlines Corporation on April 10, 1970. The transfer document, signed by respondent Lee as president of Lee Pontiac, Inc., transferred all the assets of Lee Pontiac, Inc., dba Trans Magic Airlines. This transfer was subject, however, to all existing liabilities.

On October 19, 1971, the appellant, Mountain States Telephone, stopped furnishing telephone equipment and services to Trans Magic Airlines Corporation due to delinquency in the payment of its account. After Trans Magic Airlines Corporation failed to respond to appellant's demand for payment of this account, demand was made on respondent to perform according to his continuing guarantee. When Lee did not honor the continuing guarantee, appellant instituted an action against him praying for the sum of $2,134.-24, the amount due from Trans Magic Airlines, and $500, claimed as reasonable attorney fees.[3] Respondents then filed a motion to dismiss or in the alternative a motion for summary judgment on March 24, 1972. A hearing was held on April 4, 1972, and the motion to dismiss or in the alternative motion for summary judgment was in all respects granted. The minutes of the district court disclose this reasoning:

"The court ordered that it appearing that there are two separate legal entities involved in this matter and the guaran-tee not applying to Trans Magic Corporation, the Motion for Summary Judgment in all respects be granted."

The written order was entered on April 5, 1972, and this appeal is from that order.

Where the principal is a corporation, a mere change in its name, without a change in its business, does not discharge the guarantor, especially where such change is participated in by the guarantor as a stockholder.[4] There is more involved in the present case than a mere change in name, however. The change from Lee Pontiac, Inc., dba Trans Magic Airlines to Trans Magic Airlines Corporation involved a basic change in the ownership structure of the business entity. Since there was therefore no unity of ownership and interest, the alter ego doctrine is not applicable in this case.[5]

Respondent Ross Lee did, however, participate in the change of Lee Pontiac, Inc., dba Trans Magic Airlines to Trans Magic Airlines Corporation. Lee, who had been president of Lee Pontiac, Inc., had signed the articles of incorporation of Trans Magic Airlines Corporation and had also become a minority stockholder in the new corporation. His participation in the change in business form of the two business entities estops Lee, as guarantor, from using the cloak of the new corporate entity to deny liability to Mountain States Telephone under the continuing guaranty contract. Estoppel is a bar by which a party is precluded from denying a fact in consequence of his own previous action which has led another party to conduct himself in such a way that the other

3. The continuing guarantee contract signed by respondent Lee stated in part: "The undersigned further agrees that in the event it is necessary to employ an attorney or to institute legal proceedings or both, * * * for the purpose of enforcing this Continuing Guarantee, the costs of any such proceedings and the reasonable fees incurred by reason of such employment of an attorney shall be paid by the undersigned."

4. Marshall-Wells Co. v. Kramlich, 46 Idaho 355, 374, 267 P. 611 (1928); Folk v. Continental Can Co., 97 F.2d 322, 324 (4 Cir., 1938).

5. See Metz v. Hawkins, 64 Idaho 386, 133 P.2d 721 (1943); Hayhurst v. Boyd, 50 Idaho 752, 300 P. 895 (1931).

party would suffer.[6] Lee had actual knowledge of the true facts surrounding the change in business entity, and by failing as guarantor to notify Mountain States Telephone, he in effect concealed a material fact from Mountain States.

A similar case was decided in 1930 in New York. New York American v. Hub Advertising Agency [7] involved a guarantor who had been a member of a partnership which changed, with the help and knowledge of the guarantor, into a corporation after the guarantee agreement was signed. In holding that the guarantee extended to the debts of the corporation as well as those of the prior partnership, the court reasoned:

> "The change from the partnership to the corporation was not only known to the defendant, King, who was the guarantor, but he actually participated in the change to the corporate entity and became a stockholder and director without at any time having given notice to the plaintiff of the changed conditions, although the plaintiff continued to furnish credit * * *. It seems to me that it was incumbent upon the guarantor, if he desired to withdraw his guaranty after the formation of the corporation, to notify the plaintiff of the change, and not having done so, he is estopped from using the cloak of a corporate entity to which he himself was a party to relieve him of any liability under his written agreement." [8]

In the present case the change in business form was known to respondent guarantor Lee, who participated in the change to the corporate entity and became a stockholder in the new corporation. Lee did not give notice to Mountain States, although Mountain States continued to furnish credit to "Trans Magic Airlines." Lee could have withdrawn his personal guarantee in March of 1970, when the change in business entities occurred. Instead, this withdrawal was not made until October of 1971. Lee is held to his written guarantee agreement until the date of his withdrawal from that agreement.

Respondent cites Wheeling Steel Corporation v. Neu [9] as a case in point. *Neu* dealt with a sole proprietorship which incorporated several months after the guarantee in question was executed. That case, however, differs from the present case since there the creditor actually knew of the change in business form.[10] In this instance, however, the creditor, Mountain States, was not informed by Lee of any such change until October of 1971, at which time Mountain States discontinued further service to Trans Magic Airlines.

As guarantor, Lee should have withdrawn from his guarantee obligation or notified Mountain States of the change of status in Trans Magic Airlines. Since Lee failed to do either of these things until October of 1971, he is liable for the guaranteed debts of "Trans Magic Airlines" which accrued until that time.

The order of the district court in granting respondent's motion to dismiss or in the alternative motion for summary judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Costs to appellant.

McFADDEN, DONALDSON, SHEPARD, JJ., and ANDERSON, District Judge, concur.

6. *See* Bjornstad v. Perry, 92 Idaho 402, 405, 443 P.2d 999 (1968).

7. 136 Misc. 596, 240 N.Y.S. 367, 79 A.L.R. 331 (1930).

8. Id., 240 N.Y.S., at 368.

9. 90 F.2d 139 (8th Cir. 1937).

10. *Id.*, at 140.