540 P.2d 1352

**Earl BARNES, Plaintiff-Respondent,**

v.

**Sam HUCK, Defendant-Appellant.**

**No. 11654.**

Supreme Court of Idaho.

Oct. 7, 1975.

A. L. Blandford of Blandford & Blandford, Kimberly, for defendant-appellant.

William J. Langley, Twin Falls, for plaintiff-respondent.

McQUADE, Chief Justice.

This dispute arises out of an oral agreement to purchase farm machinery. On or about January 1, 1961, Sam Huck, defendant-appellant (hereinafter appellant) entered into an oral agreement to purchase from his landlord, Earl Barnes, plaintiff-respondent (hereinafter respondent) farm machinery which respondent owned for the sum of $8,255.00. Appellant also agreed at that time to reimburse respondent $350.00 for his share of the fertilizer previously applied to land he was leasing from respondent. The parties further agreed that appellant would pay respondent the principal ($8,605.00), plus interest at a rate equivalent to that charged by the Southern Idaho

Production Credit Association (hereinafter P.C.A.). According to respondent:

". . . he (appellant) was to pay each year as he had monies left over on this (farming operations) account. And it was agreed that he would pay me basically an interest rate equivalent to what he was paying P.C.A."

Appellant has not disputed that this was the nature of his arrangement with respondent.

The record discloses that appellant began making payments in March of 1962 in varying dollar amounts and continued to make payments through December 26, 1968, when he tendered what proved to be his last payment. Respondent recorded each payment as he received it, applied the money first against the accrued interest which he had calculated, with the remainder being applied against the balance left on the principal. The trial court found that while no effort was made to determine the precise interest rate charged by respondent, at no time did he charge interest in excess of the appropriate P.C.A. rate in effect during the period involved. On December 26, 1968, when appellant made his last payment there still remained $1,600.00 outstanding on the principal balance.

On October 20, 1970, respondent sent appellant a letter requesting payment of the balance still outstanding on his account. Correspondence was sent to appellant later that same year requesting payment of the remaining balance due on the account which had at that time been adjusted to $1,350.00. The second correspondence made a demand for the remaining balance plus interest calculated at 9¾% for the period of January 1, 1970 to November 30, 1970. In December of 1970 respondent met with appellant at which time they tried to settle the account. Appellant advised respondent that he would pay him once he sold his calves, but this was never done.

Respondent brought this action in April of 1972. He sought the sum of $1,350.00 for payment of the remaining principal to-

gether with interest at 6% per annum, computed from December 26, 1968, (when appellant tendered his last payment) until April 17, 1972 (when the action was filed). In addition respondent asked for interest at 6% per annum on the unpaid principal from April 17, 1972, until the date of judgment, and 6% per annum on the amount of judgment entered plus costs. In his answer, appellant asked that respondent's complaint be dismissed for failure to state a claim upon which relief could be granted, and asserted as an affirmative defense, that respondent charged usurious interest rates. Appellant also counterclaimed; first alleging that he was entitled to a set-off against respondent (based upon money he claimed he was owed as a result of work furnished to respondent); and second, alleging that by reason of the usurious interest rates charged, respondent was indebted to him for the interest charged, together with the statutory penalty of twice the amount thereof.

The trial court found in respondent's favor, concluding that the oral agreement for the sale of the farm machinery was valid and enforceable; that the parties intended from the outset that the indebtedness would be paid within a reasonable time, taking into consideration the uncertainties of a farmer's yearly income; that a reasonable time had elapsed and therefore, respondent could recover the remaining balance due and payable. The trial court also concluded that respondent had neither charged nor received usurious interest rates. Rather, the court found that the maximum amount of interest allowable under the applicable usury statute for the principal involved was $3,204.17, but that respondent had only charged appellant $2,073.68 in interest, of which sum only $1,716.57 had been collected. It therefore entered judgment against appellant in the sum of $1,350.00 together with accrued interest to April 17, 1972, (calculated to be $283.50), plus interest at 6% per annum from April 17, 1972, to the date of judgment on the $1,350.00, together with inter-

est at 6% per annum on the total of these sums from the date of judgment until paid, plus costs. Appellant's counterclaim was dismissed. Appellant thereupon made a motion for a new trial and a motion to amend and supplement the trial court's findings of fact, conclusions of law, and judgment. These motions were denied. Appellant appeals from the judgment entered and from the order denying his two motions. We affirm.

Appellant makes eleven assignments of error which can be summarized into four major contentions:

(1) Appellant's major thrust is that the agreement was usurious at its inception and that usury was apparent on the face of the transaction. Therefore, he submits, respondent should not be allowed to collect interest on the transaction, but rather appellant should recover the amount of interest paid, plus the statutory penalty of twice that amount.

(2) Appellant contends he should be granted a new trial so that he can introduce evidence that respondent refused to accept his tender of payment of the total balance allegedly made in 1966. Appellant argues that such a tender of payment halts the accrual of interest after that date.

(3) Appellant maintains that the oral agreement between the parties was so vague, indefinite and uncertain as to be unenforceable.

(4) Appellant argues that the complaint based upon the original account should be dismissed because a subsequent account had been stated between the parties.

### I.

Appellant submits that at the inception of the agreement, the interest rate being charged by P.C.A. was 6¼% per an-

num, whereas the maximum rate of interest allowable on an oral agreement at that time under I.C. § 27–1904 [1] was 6% per annum. Since the parties agreed that appellant would pay the principal at an interest rate equivalent to that charged by P.C.A., and that rate exceeded the maximum rate of interest then legally allowable on accounts of this nature by ¼ of one per cent, appellant contends that it is apparent on its face that this transaction was usurious at its inception. Furthermore while acknowledging that the amount of interest received and credited by respondent did not exceed the maximum interest rate allowable by law for the full period of the loan, and that therefore under the so-called "Eagle Rock" [2] rule, the transaction would not be deemed usurious, appellant seeks to limit the applicability of that rule to cases involving the withholding of prepaid interest, service fees, interest on interest, interest on deliquent taxes, assessments, and prepayment of the entire principal before maturity. Appellant maintains that in determining whether an agreement is usurious at its inception or on its face, the court must look at the obligation of the borrower for the full term, and not apply the "Eagle Rock" rule which looks to what has been charged or paid for such period. Under this proposed standard, because the P.C.A. interest rate from 1961 through 1972 never declined below a rate of 6% per annum, appellant argues he was at all times after the inception of the agreement obligated to pay a rate of interest exceeding the maximum permitted by law. We do not agree with these contentions.

▆▆▆ A review of the record discloses that at the time this agreement was entered into on or about January 1, 1961, the current P.C.A. rate of interest was 6% per

1. I.C. § 27–1904 as then applicable read in pertinent part:
"*Legal rate of interest.*—When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of six cents (6¢) on the hundred by the year on:

1 Money due by express contract."
This statute has been reenacted and is currently found at I.C. § 28–22–104.

2. *Eagle Rock Corp. v. Idamont Hotel Co.,* 59 Idaho 413, 85 P.2d 242 (1938).

annum and *not* 6¼% per annum as appellant argues. Appellant throughout the course of the trial attempted to demonstrate that his agreement with respondent was entered into during the late fall of 1960, when the P.C.A. rate of interest was 6¼% per annum. However, the trial court's finding that January 1, 1961, was the pertinent date, is supported by substantial, competent, although conflicting evidence, and will be sustained on appeal.[3] Furthermore, it is undisputed that the parties mistakenly believed the going rate of interest being charged by the P.C.A at the time the agreement was made to be 5% per annum, and that this mistaken belief was attributable to appellant's erroneous statement to respondent that he was paying 5% interest to P.C.A. at that time. Respondent had no reason to question the veracity of this statement, and in fact relied and acted upon its accuracy as the basis for the agreement. Thus, even if the agreement was entered into in the fall of 1960, (when the P.C.A. rate of interest was at 6¼% per annum) appellant is nevertheless estopped from asserting that the agreement was usurious at its inception. As stated in *Mountain States Telephone and Telegraph v. Lee*:[4]

"Estoppel is a bar by which a party is precluded from denying a fact in consequence of his own previous action which has led another party to conduct himself in such a way that the other party would suffer."

Finally, as this Court has repeatedly recognized, usury is a matter of intention. It does not appear from a review of the circumstances surrounding the entering into this transaction that respondent " . . . knowingly and with corrupt intent charged usurious interest."[5]

We do not agree with the severe limitation that appellant attempts to place upon the applicability of the "Eagle Rock" rule. In *Eagle Rock Corp. v. Idamont Hotel Co.*, the Court reiterated the rule first pronounced in *Easton v. Butterfield Live Stock Co.*,[6] to be followed in determining whether usurious interest has been charged or collected:

"In determining whether usurious interest has been charged or collected under a particular contract, it is not permissible to consider only a portion of the term. The test is: Did the lender under his contract charge or receive a profit on his investment in excess of the maximum rate for the full period of the loan? If he has, there is usury; otherwise not." [7]

The trial court used this method of calculation and determined that the amount of interest respondent charged between January 1, 1961, and April 17, 1972, was substantially *less* than the amount he was entitled to charge under the applicable usury standard.

II.

Appellant next assigns as error the refusal of the trial court to open the judgment rendered for the purpose of allowing him to introduce evidence that a final divorce decree was entered between respondent and his wife on September 2, 1966. Appellant maintains that while this divorce was still pending, he tendered payment of the remaining balance on his account to respondent, but that respondent refused to accept this tender. Therefore he argues, in light of this tender, the accrual of interest should have ceased as of the effective date of the divorce. It is appellant's belief that payments made after that date (totalling $1,590.00) should have been applied ex-

3. *See* I.R.C.P. 52(a) ; *Thompson v. Fairchild,* 93 Idaho 584, 468 P.2d 316 (1970).

4. 95 Idaho 134, 135–36, 504 P.2d 807, 808–09 (1972). *See also Bjornstad v. Perry,* 92 Idaho 402, 443 P.2d 999 (1968).

5. *See Bethke v. Idaho Savings & Loan Association,* 93 Idaho 410, 414, 462 P.2d 503, 507 (1969) and cases cited therein at footnote 16.

6. 48 Idaho 153, 279 P. 716 (1929).

7. *Id.* at 159–160, 279 P. at 718.

clusively to principal, leaving an unpaid balance of $1,010.23, accruing with no interest. We do not agree with this argument.

The record does not support appellant's contention that he tendered the remaining balance still due on his account to respondent sometime in 1966 while respondent's divorce was pending, but that respondent refused to accept it. The only testimony in the record appellant alludes to support his contention is the following colloquy between his counsel and respondent on cross-examination:

"Q. Well, did you at that time, (of divorce) have a conversation with defendant in this case that you did not want to take payment at the time that the divorce was in process?

A. I probably did."

This testimony indicates a conversation between appellant and respondent probably did occur sometime in 1966, at which time respondent remarked to appellant he did not want to take payment at that time because of his pending divorce, but does not show that appellant tendered the money and that it was refused. Therefore, evidence of the divorce was irrelevant and of no probative value.

### III.

Appellant next argues that the agreement between the parties was so vague, indefinite and uncertain that the intent of the parties could not be ascertained and accordingly the agreement should be found to be unenforceable. He contends that there was no agreement as to: (1) whether the balance was to be paid in installments or in a lump sum; (2) when each installment was due (assuming the balance was to be paid in installments); (3) a final maturity date for the entire indebtedness. Therefore it is appellant's belief that respondent's complaint should have been dis-

missed for failure to state a claim upon which relief could be granted.

■■ As a general rule if a contract is so vague and indefinite that the intent of the parties cannot be ascertained therefrom, it is unenforceable.[8] In applying this rule, courts will not hold the contracting parties to a standard of absolute certainty relative to every detail of a contract.[9] Rather only reasonable certainty is necessary before a contract will be given legal effect. This is because,

"[T]he law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained."[10]

■ We believe that the agreement at issue was sufficiently certain, as to its terms and requirements to render it enforceable. In answering appellant's three allegations on this point, we note: First, that the record unequivocally discloses that the agreement made by the parties was to be paid in installments and not in one lump sum. Secondly, while it is true no specific date was ever agreed upon as to when each installment was to be tendered, appellant was to make payments at least once a year when his farming account with respondent was settled. As respondent testified: ". . . he was to pay *each year* as he had monies left over on this [farming operations] account." (emphasis added.) Thirdly, while the due date for the payment of the indebtedness was left unsettled, this does not constitute a fatal flaw to the enforceability of the agreement. As noted in *Curzon v. Wells Cargo, Inc.*,[11]

"Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation

8. *Taysom v. Taysom*, 82 Idaho 58, 349 P.2d 556 (1960).

9. *Id.*

10. 11 Williston on Contracts 813, § 1424 (3rd ed. 1968).

11. 86 Idaho 38, 43, 382 P.2d 906, 908 (1963).

of the parties, and the circumstances attending the performance."

The trial court determined that both parties intended at the outset that the debt would be paid off by appellant within a reasonable time, bearing in mind the uncertainties of a farmer's income for specific years in the future, and that after the lapse of twelve years, respondent had the right to declare all the remaining indebtedness due and payable. We find no error with that conclusion.

### IV.

In his final assignment of error appellant contends that the complaint should have been dismissed, because the agreement that respondent relied upon in bringing this action had been superseded by a new agreement between the parties, and respondent's failure to bring an action on the subsequent agreement rendered his complaint fatally defective. Appellant maintains the record discloses that in December of 1970, the parties met and "settled up" their account, and entered into a new account; and that this settlement became an "account stated" rendering the original account no longer operative. Therefore appellant submits that respondent was compelled to bring an action based upon the "account stated" or none at all.

In *O'Harrow v. Salmon River Uranium Development, Inc.*[12] this Court addressed itself to what constituted an "account stated," and said the following:

"To constitute an account stated the transaction must be understood by the parties as a final adjustment of the respective demands between them and the amount due. An account stated becomes a new contract which exhibits the state of account between the parties and the balance owing one to the other, and *two things must appear, first a mutual examination of the claims of each other by the parties; and second, that there is a mutual agreement between them as to the correctness of the allowance and disallowance of the respective items or claims and of the balance as struck upon the final adjustment of the whole account and demands on both sides.* (Cite omitted.) An account stated must receive the assent of both parties; the minds of the parties must meet for an account becomes stated only by reason of acquiescence in its correctness. (Emphasis added)"

The record does not support the claim that an "account stated" was created between the parties at the time they met in December of 1970. The record does not disclose that a mutual agreement was reached which constituted a final adjustment of the account setting forth a new balance. Therefore, this action was properly brought on the original account.

Judgment affirmed.

Costs to respondent.

McFADDEN, DONALDSON and SHEPARD, JJ., concur.

BAKES, J., concurs in result.

12. 84 Idaho 427, 430–31, 373 P.2d 336, 338 (1962).