

# The Attorney General of Texas

October 1, 1979

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Alton Bowen
Commissioner
Texas Education Agency
201 East 11th Street
Austin, Texas 78701

Opinion No. MW-61

Re: Duty of a city to provide
police protection and city services
to area acquired by a state agency
from the federal government.

Dear Commissioner Bowen:

Your predecessor asked if the City of San Antonio is legally obligated to provide police protection and other city services to an area consisting of approximately eight acres within the city limits that the Education Service Center, Region 20, acquired from the United States in 1975. The United States conveyed the tract on the condition that the property be used for thirty years as an educational facility and that the center comply with certain provisions of the federal Civil Rights Act of 1964. It also reserved the right to "full and unrestricted control, possession, and use of the property" in times of emergency during the thirty-year period.

The City of San Antonio questions the jurisdictional effect of the 1975 conveyance from the United States to the center. The center contends that ipso facto, the conveyance worked a recession of jurisdiction to the state and its political subdivisions.

The land was obtained in two separate transactions by the United States for use as a military depot site. Article I, section 8, clause 17 of the United States Constitution empowers the federal Congress:

> To exercise exclusive Legislation . . . over all Places
> purchased by the Consent of the Legislature of the
> State in which the same shall be, . . . for the Erection.
> of Forts . . . and other needful Buildings. . . .

Governors of Texas in 1942 and 1948, acting pursuant to V.T.C.S. articles 5242, 5243, and 5247, formally ceded to the United States

> exclusive jurisdiction over [both tracts of land] . . . to
> hold, possess, and exercise said jurisdiction over the

same as long as same remains the property of the United States of America. . . .

Governor's Deed of Cession, Feb. 2, 1945. (Emphasis added).

The property was within the political jurisdiction of the City of San Antonio until exclusive jurisdiction was ceded by the state to the federal government. The legal effect of such a cession deed is to be determined by Texas law, but after exclusive federal jurisdiction has attached, the legal effect of an act purportedly effecting a recession of jurisdiction to the state is determined by federal law. Humble Oil & Refining Company v. Calvert, 464 S.W.2d 170 (Tex. Civ. App. — Austin 1971), cert. den., 409 U.S. 967 (1972). According to the United States Supreme Court, the sovereignty of the United States over property acquired pursuant to article I, section 8, clause 17 ends with the reasons for the existence of the federal power and the disposition of the property. S.R.A. v. Minnesota, 327 U.S. 558 (1946). See also United States v. Goings, 504 F.2d 809 (8th Cir. 1974).

In United States v. Goings, supra, the court considered the appeal of a defendant charged with a federal crime on land over which exclusive federal jurisdiction had been ceded by North Dakota, but which had been subsequently conveyed by the United States to United Tribes of North Dakota Development Corporation under a deed identical in all material respects to the deed employed here. As here, that deed declared the property, formerly part of a fort, to be surplus to the needs of the grantor. (See 40 U.S.C. § 472(g), defining "surplus property," and 40 U.S.C. § 484(k), concerning the disposal of federal lands.) It, too, contained several conditions and a covenant reserving to the United States "the full and unrestricted control, possession, and use of the property conveyed in times of emergency" during a thirty year period, with a corresponding obligation on the part of the United States to pay rent during any such emergency period. The principle conditions, as here, were that the property be used thirty years for certain educational purposes, and that the grantee comply with the Civil Rights Act of 1964.

The defendant argued that he could not legally be prosecuted under the federal statute (18 U.S.C. § 113(c), applicable to "Clause 17" lands; see 18 U.S.C. § 7(3)) because the United States had divested itself of exclusive jurisdiction. The federal court agreed, in United States v. Goings, supra, that:

> Here, the reasons for the existence of the [federal] power are no longer present. The purchaser, United Tribes, is a private enterprise which owns and uses the land exclusively for educational purposes. The conditions subsequent imposed by the United States did no more than insure that the sale was in accordance with the statutory authorization for the disposal of federal lands. No federal function is performed and no continuing federal involvement in the lands is maintained.

> . . . [D]oes the covenant reserving in the United States the right to use during periods of emergency require a holding that exclusive

jurisdiction was not relinquished?  It is settled that more than private use of the lands is necessary to revest jurisdiction in the State.  Humble Pipe Line Co. v. Waggonner, 376 U.S. 369 ... (1964)...  In addition, the land must no longer be under the ultimate control of the federal government ready for use when needed for the military purposes for which it was dedicated.  See, Humble Pipe Line Co. v. Waggonner, supra. ...

Whether the United States will ever exercise the reserved right to use the lands during periods of emergency is a contingency too remote for prediction.  Its exercise, however, will make the United States the lessee of United Tribes.  The sale transferred to United Tribes ultimate control over the lands and recognizes that any use by the United States is temporary.  We agree with the trial court's holding that this covenant is a declaration of procedure to facilitate the government's power of eminant domain.  The United States no longer holds the property intact dedicated to the purposes and objects of Clause 17.  Jurisdiction must revert to the State.

Id. at 811, 812.

In the light of the Goings case, we believe federal jurisdiction over the land has been relinquished, and that the City of San Antonio has the same power, obligation and duty to furnish police protection and other city services to the area in question that it has to furnish such protection and services to other areas of the city.  See Attorney General Opinion V-715 (1948).

### SUMMARY

The City of San Antonio has the same power, obligation and duty to provide police protection and other city services to an area within the city acquired by a state agency from the federal government that it has to furnish such protection and services to other areas of the city.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Jim Allison
David B. Brooks
Susan Garrison
Rick Gilpin
William G Reid
Bruce Youngblood