The UNITED STATES SHOE CORPORATION, an Ohio Corporation, Plaintiff,

v.

Patrick A. HACKETT and Rosemary H. Hackett, Defendants.

No. 84–C–0176.

United States District Court, E.D. Wisconsin.

Jan. 15, 1985.

Gary P. Lantzy, Kohner, Mann & Kailas, S.C., Milwaukee, Wis., for plaintiff.

Michael A. Bowen, Foley & Lardner, Milwaukee, Wis., for defendants.

## CASE STATEMENT

WARREN, District Judge.

This is a collection action based on diversity jurisdiction. Defendants responded to plaintiff's complaint by moving to dismiss on the ground that the complaint failed to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. Plaintiff resisted and by cross-motion seeks summary judgment. Both sides have filed extensive briefs and affidavits, and the Court has heard oral argument. Furthermore, since one of defendants' business entities, G.I. Corporation, Inc., formerly Graebels, Inc., has filed a petition under Chapter 11 of the Bankruptcy Code, and commenced a preference suit against the United States Shoe Corporation claiming a preference of $13,219.13, the parties have entered into a stipulation whereby the alleged preference suit has been settled and the amount of that settlement added to the plaintiff's prayer for relief herein subject to various procedural guarantees. Thus the prayer in this case is increased from $77,788.26 to $84,788.26. The Court has approved that stipulation. The following shall constitute the Court's findings in this case with respect to the motions under Rule 12(b) and Rule 56, F.R. C.P.

## FINDINGS AND DECISION

Plaintiff herein is an Ohio corporation engaged in the manufacturing of shoes. Defendants are a husband and wife engaged in retail shoe sales in and around the Milwaukee area. They have previously done business through a variety of corporate entities, to-wit, Hackett Enterprises, Inc., Graebels, Inc., Graebel's Fond du Lac Shoe Corporation, Inc., and Mequon Shoe Corporation. On December 28, 1976, all four corporations were merged and the sole surviving corporation was Graebels, Inc.

For some years prior to the merger, the Hacketts had been expanding their business endeavors. During the period in question in this case, Hackett Enterprises, Inc. would frequently make wholesale shoe purchases for various other Hackett corporations. In so doing, Hackett Enterprises would order shoes from the plaintiff with the purchase order directing delivery to other Hackett stores, but with instructions that the billings were to be rendered to Hackett Enterprises, Inc. at 7630 West Capitol Drive, Milwaukee, Wisconsin 53222. A similar practice was sometimes followed with respect to purchase of other supplies for the Hackett corporations.

Anthony P. Rastani was the Regional Credit Manager of the United States Shoe Corporation who had oversight of the various Hackett business entities during the period from 1973 through May, 1978. Rastani was well acquainted with both defendants and dealt with all of the Hackett business entities at various times. He testified on deposition that plaintiff had a new Director of Credit in 1971 or 1972 and this person began seeking personal guarantees on all larger or marginal business accounts. Rastani sought and obtained, on December 21, 1973, a personal guaranty from Patrick Hackett and Rosemary Hackett, as individuals, covering the debts of "HACKETT ENTERPRISES, INC., a Wisconsin corporation d/b/a GRAEBELS, whose principal address is 7630 West Capitol Drive, Milwaukee, Wisconsin 53222." A copy of this document is attached hereto as Attachment A. The form was one prepared by the plaintiff's Legal Department. Rastani indicated in his affidavit and deposition that words describing the debtor on this form had been prepared by him during a conversation with Hackett. He testified

that the plaintiff chose all the language of the guaranty and that Hackett signed the document just the way it was submitted to him (Rastani Dep. T–35).

At the time the guaranty at issue was sought and obtained, the Hacketts were purchasing, through Hackett Enterprises, Inc., the start-up inventory for a new store in the Bayshore Shopping Center. Thus the purchases were substantially larger than the on-going purchases made through Hackett Enterprises for the regular course of business of the various outlets. Mrs. Hackett's affidavit explains that the couple wanted to pay off the start-up costs over a 36-month period on an installment basis. The plaintiff agreed to the proposal but insisted that the guaranty be provided in connection with this special arrangement. Defendants' affidavit avers that the debt arising from the start-up inventory purchase was retired over a 36-month period as contemplated, and that by 1976 or early 1977 at the latest, that debt had been paid in full. This contention was not refuted by plaintiff and the parties agree that the obligation being sued upon represented purchases made after the merger of the earlier corporations into Graebels, Inc.

The record further indicates that on January 29, 1974, a security agreement was entered into between Mequon Shoe Corporation and the United States Shoe Corporation wherein the debtor was described as a "corporation in good standing under the laws of the State of Wisconsin" and that it "is doing business as Graebels." In transmitting a copy of the agreement to defendants, plaintiff addressed it to "Mr. Pat Hackett, Graebels, Inc." It is clear and undisputed that before, during, and after the submission of the guaranty, Rastani was familiar with the various Hackett entities and their practice of doing business as Graebels.

On December 28, 1976, about three years after the guaranty described above, articles of merger were filed under which Hackett Enterprises, Inc., Mequon Shoe Corporation, Inc., Graebel's Fond du Lac Shoe Corporation and Graebel's, Inc. were merged into a single corporation under the name of the surviving entity, "Graebels, Inc." Under Article IV of said document, the assets and liabilities of the constituent corporations were transferred to the survivor. Hackett Enterprises, Inc. ceased to exist as of the date of the merger and conducted no business thereafter. The purchases involved in this lawsuit were made during 1982 and 1983 and do not cover purchases made by any business entity while Hackett Enterprises, Inc. was still in existence. After the merger described above, the Hacketts continued to control Graebels, Inc. and to conduct business in said name. Neither Patrick Hackett nor Rosemary Hackett ever formally, in writing or otherwise, revoked the guaranty executed by them on December 21, 1973.

It is undisputed that the Hacketts never formally advised the plaintiff of the merger of the various corporations into Graebels, Inc. However, it is also clear that plaintiff had knowledge of the separate corporate entities and did business with each of them.

Under common law, the obligations devolving upon one who is a guarantor under a suretyship agreement are derived from the terms of the agreement. *Mitchell Street State Bank v. Froedtert*, 169 Wis. 120, 170 N.W. 822 (1919). Thus the scope of a guaranty, as to duration and obligations covered, will be determined by the document which creates it.

Where the language of a guarantee contract is unclear, the Court may consider parol evidence to determine the intentions of the parties. As noted in *Wisconsin REIT v. Weinstein*, 509 F.Supp. 1289, 1295 (E.D.Wis.1981),

> "The court must determine if there is ambiguity in the language. If there is, then it is for the finder of fact to resolve, based upon the parole evidence, the meaning of the instrument, unless the extrinsic evidence is not conflicting or no conflicting inferences can be drawn from it...."

In this case, there is a great deal of extrinsic evidence that is not conflicting as to the

facts. Therefore, the Court believes this action may appropriately be disposed of as a matter of law.

■ The guaranty at issue by its terms was to "... continue until expressly revoked by written notice to U.S. Shoe...." If the parties intended that a guaranty shall continue for an indefinite time, it will be operative until rightfully revoked or otherwise terminated, *Thiensville Creamery Co. v. Hickcox*, 165 Wis. 537, 162 N.W. 660 (1917).

Where subsequent to the execution of a guaranty or suretyship an obligor commercial enterprise undergoes a change in name, location, composition, structure, or the like, it is frequently argued by a guarantor or surety, upon the obligor's default, that such changes serve to release the obligor from its liability to the obligee. As a general proposition, the courts have taken the position that such liability is not terminated merely because the obligor business undergoes a change of name or location; in the type of business conducted; from a sole proprietorship to a corporation; from a partnership to a corporation; by the transfer of its assets to another corporation or by its reincorporation; by the takeover of a corporation by its creditors; or by a corporation's dissolution or cessation of business. 69 A.L.R.3d 567 § 2(a) (1976).

Those cases where it has been held that some change in the identity of the debtor released the guarantor were decided on the grounds that the change had the effect of creating a different contract on which the guarantor never intended to be liable. 38 Am.Jur.2d *Guaranty* § 81 (1968). Some of the older cases indeed seem to stand for the proposition that a guarantor has the right to prescribe very technically the exact terms upon which he will enter into a guaranty and that any variation from those terms vitiates his obligation, *Peara v. Atlanta Newspapers, Inc.*, 120 Ga.App. 163, 169 S.E.2d 670 (1969). Other courts have taken the position that only changes that produce harm to the guarantor will serve to release the obligation.

■ Thus, as a common proposition, the courts have not permitted the guarantor to escape liability based upon a mere change of name or location without more. It is only where transformation of the obligor results in increased risk to the surety that release of the latter becomes a consideration. 38 Am.Jur.2d *Guaranty* § 81 (1968).

Here, plaintiff argues that both before and after the merger there was a continuity of control; that the nature of the business remained the same; that the same stores were still selling shoes under the name "Graebels"; and that the merger amounted to a change of form, but not of substance. Defendants contend that the guaranty was drafted by United Shoe and must be construed against United Shoe. Defendants also argue that the guaranty was sought by and intended by the parties to undergird a particular transaction. They claim that the application of a 1973 guaranty for the debts of Hackett Enterprises, Inc. to the 1982 and 1983 debts of a bankrupt Graebels, Inc. demonstrates the expansion of risk which should vitiate any liability.

Plaintiff presents *Mountain States Telephone and Telegraph v. Lee*, 95 Idaho 134, 504 P.2d 807 (1972), as being a close parallel to the case at bar. There, Lee Pontiac d/b/a Trans Magic Airlines operated a business under the latter name. Lee guaranteed the payment of the "Trans Magic Airlines" account to Mountain States Telephone. Trans Magic Airlines later was incorporated and the assets of Lee Pontiac transferred to the new corporation with Lee participating. The Supreme Court of Idaho held that Lee was estopped to deny liability under these circumstances where he, as president, participated in the change without withdrawing the guaranty or advising the telephone company. 504 P.2d at 809.

Plaintiff feels that the scope and nature of the Graebels operation was the same before and after the merger in 1976 and that Patrick and Rosemary Hackett should be estopped to deny liability on the guaranty. *New York American v. Hub Advertis-*

*ing Agency,* 136 Misc. 596, 240 N.Y.S. 367 (1930); *D.N. & E. Walter & Company v. Zuckerman,* 214 Cal. 418, 6 P.2d 251 (1931); *Massey-Ferguson, Inc. v. Finocchiaro Equipment Co.,* 496 F.Supp. 655 (E.D. Penn.1980), *aff'd,* 649 F.2d 859 (3rd Cir. 1981). The plaintiff's position is that the Court should not give credence to form over substance. Defendants argue that the change here involved substance and not merely form.

The defendants rely on *Teledyne Mid-America Corporation v. HOH Corporation,* 486 F.2d 987 (9th Cir.1973) for the proposition that an original guaranty by individuals of the debts of a proprietorship, C.W. Shafer, d/b/a Shafer Distributing Company, which was later incorporated, merged and reborn as a wholly-owned subsidiary of HOH Corporation, were released because the entity the creditors sought to reach no longer remotely resembled the original obligor. Defendants also call the Court's attention to *International Paper Company v. Grossman,* 541 F.Supp. 1236, 1241 (N.D.Ill.1982), where the court explained:

New York's appellate court dealt a half-century ago with the identical question posed by this case—the effect on a guaranty of the debtor's merger into another corporation (with the consequent loss of identity of the debtor)—and has decided that the guarantor could not be held liable for defaults occurring after the merger. [citing case] That result ... follows a fortiori where the extensions of credit on which plaintiff sues were given *after* the merger. (Emphasis original). .... To distort and extend the language of the Guaranty to a situation not contemplated or provided for when it was drafted would do violence to the principles announced in the Illinois case law as well as in *Worth [Corp. v. Metropolitan Casualty Ins. Co. of New York,* 142 Misc. 734, 255 N.Y.S. 470 (1932)]* and other New York cases.

As in *Teledyne,* there is no question in the present case that the transactions on which plaintiff sues took place after the merger.

However, the case that gives this Court the clearest guidance as to what the appropriate decision in this action should be is *Bernardi Bros., Inc. v. Great Lakes Distributing Inc.,* 712 F.2d 1205 (7th Cir.1983). In that case a gentleman named Estevez, planning to open a car wash business in Chicago, arranged for Great Lakes Distributing to guarantee the installment note for the car wash equipment. Andre Estevez was a sole proprietor. Between the time of the guaranty and the execution of the sales contract on the equipment, he incorporated his business as "Finest Car Wash, Inc." After Estevez defaulted, the car wash equipment manufacturer sued Great Lakes as guarantor. Defendant argued release by reason of material changes. *Id.* at 1206–08.

The Seventh Circuit panel hearing *Bernardi* noted that in *Essex International, Inc. v. Clamage,* 440 F.2d 547, 550 (7th Cir.1971), the court had said:

"Unless there is some material change in the business dealings between the debtor and the creditor-guarantee and some increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged."

The court then proceeded to examine whether or not the facts of *Bernardi* constituted a "material change" in the relationship of the parties so as to justify release. It felt that the only result of the incorporation was to divide Estevez's personal assets into the corporate assets of Finest Car Wash and the remaining personal assets of Estevez. Since Estevez was personally liable on the note under either case, Great Lakes Distributing remained liable on the guarantee.

■ The case at bar is illuminated by *Bernardi,* but the facts are different. This is not a case where the original debtor merely changed its name or form of business entity. Assuredly the situation is complicated by the wording of the guaranty document. The Hacketts' guaranteed the obligations of

"HACKETT ENTERPRISES, INC., a Wisconsin corporation, d/b/a GRAE-

BEL'S whose principal address is 7630 West Capitol Drive, Milwaukee, Wisconsin 53222."

The Court interprets this to mean the Hacketts were guarantying the obligations of Hackett Enterprises when doing business as Graebels. The affidavits show that this is a role that Hackett frequently played, i.e., that of a purchasing agent for the various corporations. At the time the guaranty was executed, however, there were four distinct corporations. There is no indication that United Shoe, in 1973, was seeking in this document the guaranty of any of the other corporations. Indeed, shortly after the execution of this guarantee, United Shoe and Mequon Shoe Corporations executed a security agreement wherein Mequon Shoe Corporation was described as "doing business as Graebels." If the parties intended the 1973 guaranty to cover the four merged corporations doing business as Graebels, Inc. in its own right, why did United Shoe execute the security agreement with Mequon Shoe Corporation in January, 1974? After the merger, Hackett Enterprises ceased to exist. Graebels, Inc. came into being doing the business formerly done by all four corporations sometimes in their own names, sometimes under the non-corporate trade name "Graebels." It is clear to the Court that the risk inherent in guarantying the obligations of "Hackett Enterprises d/b/a Graebels" is nowhere near as great as that in gurantying the combined obligations of the four corporations merged into a new entity entitled "Graebels, Inc."

This view of the case is buttressed by the affidavit of the Hacketts to the effect that the guaranty was meant to cover the one-shot start up inventory of the new Bayshore store and contemplated a pay-off within 36 months. This averment was not controverted by plaintiff's materials.

Because it believes that the undisputed facts before it present a case where the entity whose debts were guaranteed underwent a change that significantly expanded the guarantor's risk and because the new entity is an entirely different business organization than the one whose debts the Hacketts guaranteed, the Court does herewith GRANT defendants' motion for summary judgment against the plaintiff and in favor of defendants.

---

EXHIBIT A GUARANTY

### GUARANTY

To: THE UNITED STATES SHOE CORPORATION (and subsidiaries)
1658 Herald Avenue
Cincinnati, Ohio 45212

IN CONSIDERATION of your having at the request of the undersigned agreed to establish credit for HACKETT ENTERPRISES, INC., a Wisconsin Corporation, d/b/a GRAEBEL's whose principal address is 7630 West Capitol Drive, Milwaukee, Wisconsin 53222.

("Debtor"), for merchandise sold and delivered or to be sold and delivered in the future, or for other monetary or credit advances heretofore, concurrently or subsequently granted to the Debtor by The United States Shoe Corporation and its subsidiaries ("U. S. Shoe"), and in the further consideration of the sum of ONE DOLLAR and other good and valuable consideration in hand paid to the undersigned, the receipt of which is hereby acknowledged, the undersigned (jointly and severally) does hereby unconditionally guarantee the prompt payment at maturity of any and all indebtedness now due U. S. Shoe or which may hereafter by incurred by said Debtor to U. S. Shoe, together with reasonable collection charges and reasonable attorneys' fees. This Guaranty shall extend to and cover renewals of any indebtedness guaranteed hereby or extensions of time for payment thereof and shall not be affected by any surrender, exchange, acceptance or release by U. S. Shoe of any other security held by it for any indebtedness hereby guaranteed, now existing or hereafter arising.

THIS GUARANTY shall continue until expressly revoked by written notice to U. S. Shoe, but in no case is it to be revoked as pertaining to merchandise already delivered or ordered and in process of manufacture, or for monetary advances granted to the Debtor prior to actual receipt of said notice of revocation. Such notice of revocation shall be sent by registered or certified mail, return receipt requested, to U. S. Shoe at the address shown above, or to such other address as may be specified in writing by U. S. Shoe.

The undersigned hereby agrees that this Guaranty shall bind the heirs, executors, administrators, successors and assigns of the undersigned, but in no event shall the obligations of the undersigned hereunder be transferred or assigned without the prior express written consent of U. S. Shoe.

Dated at _____ this _____ day of _____, 19__.

ATTEST/WITNESS

_____

_____

STATE OF _____ ILLINOIS _____ ⎫
COUNTY OF _____ COOK _____ ⎬ SS
 ⎭

On December 21 , 1973, before me, the undersigned, a Notary Public, in and for the said County and State, personally appeared:

(FOR INDIVIDUALS) _____ Patrick A. Hackett _____
 Rosemary H. Hackett
known to me to be the persons whose names _____ subscribed to the within instrument and acknowledged to me that they executed the same as a free act and deed.

(FOR CORPORATIONS) _____

known to me to be the _____ President and _____ Secretary, respectively, of the corporation named in the foregoing instrument, known to me to be the persons who executed the within instrument on behalf of the corporation named in the foregoing instrument, and acknowledged to me that the same was their free act and deed of said corporation duly authorized by its Board of Directors.

WITNESS my name and official seal

My Commission expires _____ June 6, 1977 _____ _____
 Notary Public